TOM BANKS v. THE STATE.

No. 5349.   Decided April 2, 1919.

Rehearing denied May 3, 1919.

1.—Murder—Malice—Sufficiency of the Evidence.

Where, upon trial of murder, the evidence showed that the defendant and others fired into a moving railroad train and killed the brakeman, it was not necessary for the state to show specific malice, and the evidence being otherwise sufficient to sustain the conviction, there was no reversible error.

2.—Same—Confession—Principal.

Where defendant's written confession showed a deliberate unprovoked shooting into a moving railroad train, which resulted in the death of a brakeman, the defendant claimed that he shot each time his companion shot, but that he fired into the ground, but other evidence showed that he fired into the train, he was guilty as a principal, altho he may not have fired the fatal shot.

Appeal from the District Court of Polk County. Tried below before the Hon. J. M. Manry, judge.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*C. M. McKinnon,* for appellant.

*E. A. Berry,* Assistant Attorney General, for State.—On question of principals: Banks v. State, 52 Texas Crim. Rep., 480, and cases cited in companion case.

LATTIMORE, JUDGE.—In this case appellant was convicted in the District Court of Polk County of the offense of murder and his punishment fixed at death.

On his appeal but one question is presented and but one question was contained in the motion for new trial, namely, that the evidence does not show appellant guilty of that character of homicide which should be punished by the extreme penalty of death.

It appears from the record that on the night of the homicide, and while at his post of duty on a moving railroad train one Hawkins, a negro brakeman was shot and killed by some member of a party of negroes who were walking along a dirt road near to the railroad track. No reason is assigned for such shooting and it does not appear that appellant or any member of the party was acquainted with any of the parties on the train and that any specific malice could be directed toward the deceased, but under our law the same is not necessary.

One who deliberately uses a deadly weapon in such reckless manner as to evince a heart regarless of social duty and fatally bent on mischief, as is shown by firing into a moving railroad train upon which human beings necessarily are, cannot shield himself from the consequences of his acts by disclaiming malice. Malice may be toward a group of persons as well as toward an individual. It may exist without former grudges or antecedent menaces. The intentional doing of any wrongful act in such manner and under such circumstances as that the death of a human being may result therefrom is malice. In the instant case the appellant admits his presence and participation in the shooting which resulted in the death of the deceased. His written statement, introduced in evidence, is as follows:

"State of Texas

County of Polk

"The following is a voluntary statement of Tom Banks, Jr., made to me, John McLoed, on this the 3rd day of October A. D., 1918, after having first been warned by me, John McLeod, that he did not have to make any statement at all, and that any statement made may be used in evidence against him on his trial for the offense concerning which the confession is herein made.

"On last Sunday night, Sept. 29, in company with John L. Davis, and Garnett Davis, I was going from New Willard to Leggett, Texas, and was walking the dirt road that runs parallel with the railroad track, and just a short way from New Willard we saw a train coming south on the H. E. & W. T. track, and just before the engine passed us, John L. Davis said 'Less shoot into that train,' and I said, 'No, less don't do that' and then Garnett Davis said, 'Yes, less shoot into it' and just before the engine passed us John L. Davis handed me his pistol and said 'Here take this and you can burn it,' and I said, 'No,' but I took the pistol and just as the train passed I shot into the ground by the wire fence, and looked around and I saw Garnett Davis shoot into the engine and as the caboose passed I shot again into the ground and Garnett Davis shot into the caboose and we walked on by the side of the road a little in the bushes, and soon we met two automobiles, and I said, 'Less shoot into these cars' and John L. said, 'No you have all shot enough,' and I said, 'Yes, but I did not hit anybody for I shot into the ground.' We then crossed the dirt road and through the wire fence and on to the railroad, and while we were walking along, both Garnett and John L took the empty shells out of their guns. We all walked the railroad until we came to the place where Garnett left the railroad, and there we separated and John L and myself walked on to Leggett, and I never saw Garnett any more until Tuesday, and I went to his house and we talked about the shooting, and he told me he had not heard of the man being killed until Monday at dinner time. I told him then that I did not shoot at the train but that I shot at the ground, and he said I shot at the gangway, and he asked me not to say anything about it and I told him I would not unless they put me in jail and made me tell it, and then I was going to tell the truth. The gun I shot was the gun that John L. Davis had with him that night, and was a 38 long, and the gun Garnett was shooting was a 45 calibre. John L. Davis did not shoot at the train, and the shooting was done by myself and Garnett Davis. Garnett and myself were close together when we did the shooting and John L was a little behind us."

"(signed) Tom Banks, Jr."

"Witnessed by R. B. Davis

V. B. Jinson

F. W. Young."

An examination of this statement shows a deliberate unprovoked shooting into a moving train—an act which could reasonably result in the destruction of human life. No excuse or justification is pleaded, or shown in the evidence for the act. It is true that appellant says that he shot each time that his companion shot, but that he fired into the ground, which gives rise to the contention here that the State having introduced this declaration is bound by it; but the rule applicable, is that the State is only bound when there is no other evidence upon which the jury may base their rejection of any part of such statement. In this case the proof shows that two pistols were used, and appellant so states in his statement above, and also he therein says that the pistol he used was a 38-calibre and the one used by his companion was a 45-calibre. It was conclusively shown by the other evidence that the bullet which killed deceased at the front end of the moving train, and also the one which entered the caboose at the rear of the same train were 38-calibre bullets. This evidence negatives the fact that the fatal shot was fired by appellant's companion and fully justified the jury in concluding that the portion of appellant's statement in which he says that he fired into the ground, was untrue, and also fully sustained the conclusion of the jury that his were the shots which took the life of deceased. Nor can we see that the jury was not justified in assessing the extreme penalty of the law. That man who can coolly shoot into a moving train, or automobile, or other vehicle in which are persons guiltless of any wrongdoing toward him or provocation for such attack, is, if possible, worse than the man who endures insult or broods over a wrong, real or fancied, and then waylays and kills his personal enemy. The shame of the world recently has been the unwarranted killing of persons who were non-combatants and who were doing nothing and were not capable of inflicting injury upon their slayers. Of kindred spirit is he who can shoot in the darkness into houses, crowds or trains and recklessly send into eternity those whom he does not know and against whom he has no sort of reason for directing his malevolence.

The only contention here being that the evidence does not support the verdict, with which we are unable to agree, and there being no errors shown in the charge of the court, or otherwise, we direct that the judgment of the lower court be affirmed.

The judgment of the lower court is affirmed.

*Affirmed.*