### LEO BREWER v. THE STATE.

No. 20799. Delivered April 10, 1940.
Rehearing Denied October 16, 1940.

The opinion states the case.

*Wimberly & Wimberly* and *Reginald Bourke,* all of Yoakum, and *J. W. Ragsdale,* of Victoria, for appellant.

*Howard P. Green,* District Attorney, of Refugio, *S. P. Hebert, Co.* Attorney, and *Crain & Hartman,* all of Cuero, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

The appellant was convicted of murder in the District Court of DeWitt County and his punishment assessed at five years in the penitentiary. The victim was a five months' old baby.

The indictment contains two counts, the first being a charge of murder with malice by causing an automobile to collide with another car on the public highway, resulting in the death of the baby. The second count alleges murder by operating an automobile upon the public highway while intoxicated and through accident and mistake, while so driving the car, killing a child. The charge of the court submitted both counts to the jury and the verdict returned is a general one.

A large number of witnesses testified in the case, detailing observations of transactions with and conduct by the appellant and his companion throughout a large portion of the day, during which time both parties were shown to have been intoxicated. The car which they were driving belonged to the appellant. He had placed the same in the hands of Leo Spears, his com-

panion, who drove the car at all times while the appellant sat by his side on the front seat. Both were credited with conversations and participation in incidents of the day. They visited many way-side drinking and eating places, both in Yoakum and in Cuero. The only business which they transacted was that of leaving a check with one party for the payment of a debt owing to another. From all indications, the two men were engaging themselves voluntarily in association with each other for the purpose of "staging a drunk" in the appellant's 1937 Ford V-8 on the highways and at such places as they may choose to go, which were many. At several stations they were so drunk upon their arrival, or before leaving, that the proprietors refused to sell them further drinks. They were admonished to keep off the highways and to retire to some place so that they could sober up. This they refused to do and boasted that they could stay on the highway drunk and not be disturbed. This boast they made good until in the afternoon when the tragic event culminated in the death of an innocent baby and the injury to others, wrecking two automobiles and sending himself and his companion to the hospital, still too drunk to realize fully what had taken place.

Further details of the facts may not be essential to a proper disposition of the case except as they are hereinafter stated in connection with the issues discussed.

Both parties were indicted and the appellant was separately tried. When his case was called, a vigorous motion for a continuance was made on the ground that his brother, a close companion, was very ill and the appellant desired to be with him and to look after him .It is further set out that because of his troubled mind over the illness of his brother, he would not be able to properly conduct his defense. It is not shown how long the brother had been ill and whether or not the appellant had had an opportunity, since the enactment of the tragedy, to converse with his lawyers and lay before them the facts of the case from his viewpoint. The motion does not raise a legal ground for a continuance but one which would under ordinary circumstances appeal to the sympathy of the trial court. It probably did so in this case, but the court, under all the facts and circumstances, overruled the motion for a continuance and placed the appellant on trial. It is not for this court to say that he abused his discretion in doing so.

The appellant did not testify on the trial of the case in his own behalf but produced a long list of witnesses, prominent citizens of the county in which he lives, who testified to his good reputation up to that time. Further than that the de-

fense is technical, reliance being had on the contention that appellant was not driving the car, that he was too intoxicated to have authorized his companion to drive it; and that without knowledge of the presence of the deceased on the highway, and under the other admitted facts there could be no malice; and that the court, therefore, committed an error of law in his charge to the jury on murder with malice.

There are about thirty bills of exception found in the record but these will not be discussed separately. A consideration of the questions of law raised may be applied to the facts of the case by giving general consideration to them.

First, we will consider whether or not the appellant, under the circumstances of the case, may be held to be responsible for the acts of his companion in whose hands he had placed the automobile. The case of Schorr v. State, 132 S. W. (2d) 898, is relied upon. That case is an important one, but we do not believe it helpful to the appellant. Under Article 69 of the Penal Code, it is provided that a person who advises or agrees to the commission of an offense and who is present when the same is committed is a principal whether he aid or not in the illegal act. In the Schorr case, it was held that the appellant had not advised or agreed to the commission of the offense and that his presence when the offense was committed was not, under the facts of that case, sufficient to constitute him a principal offender. If the appellant has advised and agreed to all the acts and conduct of a companion whom he has placed in charge of his car and acts with him for hours, as in the instant case, in recklessly driving upon the streets and public highways in an intoxicated condition, where it may be known that the driver of the car is incapable of judicious control and the owner who places it in his hands continues with him and permits him to use it while in that condition, watches him make one reckless drive after another, as the record discloses in this case, crashing into other automobiles, a cattle-guard, into and across ditches, and repeatedly acts without judgment or discretion and without regard for the rights of others, it would seem that there would be no difficulty in concluding that he is responsible as a principal for whatever might result therefrom, provided it could have been reasonably anticipated as a result. This conclusion is not contrary to the Schorr case, supra, but is clearly indicated by the citation in that opinion of the case of Story v. United States, 57 App. D. C., 3, 16 Fed. (2d) 342, 344, 53 A. L. R. 246, in which it is said: "If the owner of a dangerous instrumentality like an

automobile knowingly puts that instrumentality in the immediate control of a careless and reckless driver, sits by his side, and permits him without protest so recklessly and negligently to operate the car as to cause the death of another, he is as much responsible as the man at the wheel."

We have held that an automobile is not a dangerous weapon per se, but when placed under the control of "alcohol at the wheel and gasoline in the tank" and driven upon the highway, the results are so uncertain that the owner agreeing thereto may be held responsible for the resulting death as though he himself had, with his own hands, guided the wheel. We think that the facts of the Story case justify us in applying the law as there laid down to the facts of the case at bar. The trial court properly held that the appellant was responsible as a matter of law under the facts before him.

The next question for our consideration is that raised by the objections to the court's charge on murder with malice. In Cockrell v. State, 117 S. W. (2d) 1105, the drunken driver of a car recklessly and negligently ran into two small boys and killed them. He was given forty-five years. The question of malice was considered in an opinion by Judge Graves of this court, the opinion on motion for rehearing being by Judge Hawkins. It was there held that the facts of that case were sufficient to give the jury "some substantial ground upon which to base their belief that he was possessed of a heart regardless of social duty and fatally bent on mischief." The opinion further applies the law of malice to the facts of that case in a very logical and forceful discussion of the authorities, and the reasoning there may well be adopted for this case. For a further consideration of the subject, see authorities discussed in the Cockrell case.

By Bills of Exception Nos. 3 to 12, inclusive, appellant complains of the admission in evidence of testimony showing his conduct and drunken condition at several places during the day preceding the collision resulting in the death for which he is charged. There is no denial in the record of his drunken condition, and we think that this testimony is pertinent and proper to show malice. By this is not meant a mature intent to take a human life but it shows a continuous conduct, dangerous to others, so recklessly and wantonly as to manifest a depravity of mind and disregard for human life, supplying the constituent elements embraced in an accepted definition of malice.

Bills of Exception Nos. 13 to 19, inclusive, complain of

proof as to the extent of the injuries received by the occupants of the car in which the deceased child was riding. Pictures of both automobiles involved and testimony relating to the condition in which they were found as a result of the collision are in the record. All of this testimony reflects that the appellant and his companion were driving at an exceedingly high rate of speed. They approached the car from the rear, traveling in the same direction, and struck it with such force as to demolish the bodies of both cars. The mother of the child had it in her lap and was on the front seat with her husband who was driving the car. An eight-year-old girl was in the rear seat, looking backward and observing the approach of appellant. When the car struck, the doors of the car which was occupied by deceased burst open and the occupants on the front seat (the father, mother and the baby) were thrown to the right side a distance of about eleven feet. The baby was described as going "into the air." It fell on the pavement and its skull was crushed. This was Saturday evening and it died the following Monday about noon. The force with which the car was struck, as reflected by the demolishing of the cars and the injuries to the occupants, is the most pertinent fact to determine whether the father of the deceased was reckless in driving on to the main street and in front of the appellant or whether the appellant was driving with such speed and in such a reckless manner that he should be charged with the responsibility for the accident. The evidence on the subject is so overwhelming and so forceful as to leave no doubt that the jury was justified in reaching the conclusion that it did.

Complaint is made of the argument of the prosecuting attorney, the objection being that it was prejudicial and inflammatory. Compared to the detailed conduct of the appellant throughout the day, and his expressed disregard for law and order, the argument of counsel is mild, very mild. No juror, the father of a child, could listen to the facts of this case detailing the death of an infant knocked from the lap of its mother, the fruitless struggle of the dazed father to render aid and the cries of the little girl for her baby brother, the frantic appeal of the mother for her child in the presence of the appellant, who was uttering disconnected words and cursing his unknown victims, would be very much impressed or have his mind inflamed by the argument of counsel, who said: "And they were going to see about having the baby baptized the next day—instead of that child being annointed with the consecrated water in the hands of a Minister of God, its

innocent blood was crushed from its tiny brain by the hands of death guided by the wanton act of that man and his companion. That child had a right to live."

The attorney merely detailed the facts of the case. The horror of this argument rested in the truthfulness of it. The jury's verdict denies the existence of any inflammatory influence.

We find no error in the ruling of the court or in his charge.

The judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING.

GRAVES, Judge.

Appellant files a lengthy motion questioning many of our conclusions in the original opinion drawn from the facts as shown by a statement covering 154 pages. In order to clarify many of the challenged statements we will attempt to give a short synopsis of the salient points of the State's case from which such conclusions are drawn.

About one o'clock on the day of the accident appellant and Spears came to Luerssen's house. Brewer fell out of the car. Spears came to the house and asked Luerssen the whereabouts of a certain person. Upon leaving he said: "We are drunk as hell." They left at a high rate of speed and tore off the left side of a cattle guard. About 1:30 the highway foreman saw appellant and his companion driving on their left-hand side of the road, and again astraddle of the black line in the center of the road. Between 2 and 3 o'clock these same two companions came to the home of Mrs. Horace Chaddick. Mr. Brewer was staggering and fell on the steps of the house. They came in the house and Spears signed Brewer's name to a check. "Brewer was too drunk to sign the check." Neither one of them could stand up straight. Mr. Chaddick testified that he saw these men leave his house. "They were kind of staggering. When they left they left in high speed in the direction towards town, towards Cuero. I saw them pull away from my place in high speed, I mean they were going wide open." This was at 2 o'clock. He saw them again at 5 o'clock in town driving fast, barely missing cars on the street. Another witness told about the trip to Chaddick's home, and about their staggering, and leaving at a high rate of speed. Mr. Dentler saw these men at 2:30 in town; he sold them each a bottle of beer, and refused to sell them any more; he thought they were drunk. At this point they ran into Mr. Nixon's car which was

parked at or near the sidewalk. Nixon got mad about it but would not accept pay for the damages. However he, with others, told these two men that they were too drunk to drive a car and should lie down somewhere and sleep it off. Appellant said that they could drive a car as good as anyone, and refused to take his advice. They again got in the car and started away pretty fast, Spears driving, both parties drunk in witness' opinion.

Mr. Bludworth saw the occurrence in Dentler's place, both Brewer and Spears seemed to be intoxicated. He advsied these two to get off the street and stop. Brewer said that he could drive a car as good as anybody.

Mr. Brantley was proprietor of the "Doll House," a lunch and beer stand. He saw Brewer and Spears at his place of business about 3 o'clock. He refused to sell them any beer; he thought they were under the influence of intoxicating liquor.

Walter Newman was working across the street from the "Doll House," and he saw Spears and another person whom he took to be Brewer come out of the Doll House. One of these men, Brewer, stumbled over the front right fender of his car, and then urinated on the sidewalk in front of the Doll House; there were two ladies sitting possibly thirty or forty feet away in another automobile. This was around 4:30 in the afternoon.

B. O. Brantley testified that these two men ran their car into his car in front of the Doll House. Both of them got out of their car and they were drunk.

Leske testified that between 3 and 4 o'clock these two men came into his beer stand and he sold them two bottles of beer; they drank about one third out of the bottles and both turned the bottles over and spilled the contents. They then ordered two more bottles and he refused to sell them any more; they were drunk. Spears tried to put a nickel in the music machine and couldn't do it, and Leske put it in for him. After being refused more beer, Spears and Brewer got up and went out and got in the car and then Brewer cursed Leske, saying "You damn s— of — a — b, I don't need your beer, I have whisky in the car." They then started off at a sharp speed knocking up rocks and gravel. They then drove into a ditch on Main Street at a fast rate of speed.

Mr. Schaefer testified that he was driving into a street 110 feet wide, called Broadway, in the city of Cuero; that he stopped before driving into said street and looked east and

saw no one; he then turned west on the right-hand side of the road, and after having driven about fifty feet his car was struck from behind and knocked some distance toward the west, and he, his wife and the baby were thrown out of the car on the right-hand side thereof. He was knocked unconscious, and when he regained consciousness he was about fourteen feet from the car. His shoulder blade was broken, and he had numerous cuts and bruises on his body; he stayed in the hospital nine days. His wife's left shoulder blade was broken, and her right arm was broken. The baby died two days thereafter. This happened about 7 o'clock in the evening.

Dr. Wagner testified that the Schaefer baby died of a fractured skull and and a hemorrhage of the brain two days after the collision. It was a well developed infant about four and a half months old, in sound health before the accident.

Dr. Boothe treated the baby immediately after the injury; it had a fracture of the skull, and a severe injury on the side, and severe injuries on the back of the skull, and a brain injury. It died at the hospital from the results of these injuries; they were the direct cause of its death. This doctor also saw appellant the night of the accident, and treated him; he was drunk, was intoxicated.

Elizabeth Gerhold, a leader of the Girl Scouts, was across the street some short distance from the scene of the collision, and she saw the Brewer car coming fast, zigzagging, when it neared the Schaefer car. She saw the collision; the Brewer car struck the Schaefer car in the rear. The Schaefer car "went up in the air, and the baby flew down on the pavement. I saw the baby fly up in the air. The Schaefer car flew up and landed on four wheels."

Robert Heyer, an undertaker, heard the noise of the collision, and saw the cars, and immediately obtained an ambulance and took Mrs. Schaefer and the two children to the hospital, and returned and found appellant at the scene of the accident, drunk and cursing. He continued cursing while in the hospital. There were many ladies there and the witness threatened to hit Brewer if he did not stop using such language. After he took Brewer to the hospital the witness returned to Brewer's car and saw several broken beer bottles in the car.

The constable, Mr. Jacobs, went to the scene of the accident and saw the cars, and saw appellant lying on the ground on the side of the car. He looked inside of the car that was up against

the fence (Brewer's car) and saw a pint and a half of liquor and a bottle of beer, and a broken beer bottle in there. There was a full pint and a half pint of whisky. The half pint was open.

Mrs. Schaefer, the mother, testified that she was in the car that was struck, and that when they turned into Broadway there was no car in sight either from the east or west. The first she knew of appellant's car was when the Schaefer car was struck from behind. She was knocked unconscious. At the time of the crash she had the baby on her lap. When she came to she heard the little girl crying and saying she wanted the baby, and the husband picked the baby up and laid it down beside the mother.

The appellant introduced a large number of witnesses who testified as to his good reputation as a peaceable law-abiding citizen. He then introduced certain portions of an alleged confession in which he made the statement that he, appellant, was so drunk that he did not remember anything about the accident.

We are asked to show what facts are in evidence to show that Brewer was a principal offender in this case.

It is unquestioned that appellant owned the car that caused the baby's death; that he as well as his companion were drunk practically the whole afternoon of the accident; that they both said so; that appellant was bound to have known the drunken condition of Spears, the driver; that Spears had at least three times evidenced his inability to properly operate an automobile; that regardless of warnings and experiences, these two men continued their movements in Brewer's automobile, in Brewer's presence, by his selection and consent, and came down a public highway, and at an immoderate rate of speed, and crushed out the life of this innocent babe, which was the inevitable consequences of the act of Brewer in allowing his drunken companion to thus recklessly endanger the lives of innocent persons rightfully on this public highway. That these continued acts of Brewer, drunk or sober, evidence a heart regardless of social duty and fatally bent on mischief, meeting the legal definition of that elusive term—malice.

We find the only defense that was offered seems to be the drunken condition of appellant, as evidenced by all excerpts from his statement made to the county attorney. We suppose that such is offered as an excuse for the fact that he directed and permitted the drunken Spears to operate his automobile. Drunk-

enness is never an excuse for crime, Art. 36, P. C., though oftentimes the cause therefor, and we are forced to believe that drunk or sober appellant was bound to have known the condition of the man to whom he had intrusted the driving of this automobile, and that he encouraged and abetted Spears in the series of acts that culminated in the death of the child. That he did not tell the driver to strike the child, of course, is true, but that he aided, abetted and encouraged the driver in doing the very things that were calculated to and did end in its death is equally true. Such reasoning, if correct, inevitably leads to the conclusion that appellant was a principal in the fatal accident.

In a 42 page motion for a rehearing appellant challenges many of the conclusions set forth in our original opinion herein; the major portion of such conclusions impress us with the conviction of their justness. Our judgment tells us that these two men were "staging a drunken drive," that they were admonished not to drive in their then condition, and made the statement that they could drive and not be disturbed, and viewing the pictures of the wrecked cars, both seemed to be practically demolished,—and that they did drive across a ditch at a rate of speed that caused their car to jump up. The motion concerns itself with an effort to minimize many of the circumstances relied upon by the State to show a reckless disregard of others rights, and an evidence of a heart fatally bent on mischief, and should such contentions have been accepted by the jury, doubtless a different verdict might have been rendered. Unfortunately for the appellant, such version did not meet with the jury's approval, and we are confronted with the facts proven by the State in support of the verdict.

We are asked to review appellant's further suggestion of error in which complaint is made relative to an excerpt from the argument of Hon. August Hartman. In order to conserve space, in this extensive opinion, we will only say that we do not think such an argument of sufficient force to cause a reversal of this case.

The case of Story v. U. S., 53 A. L. R. 246, 16 Fed. (2d) 342, is peculiarly in point. In that case Story and O'Connor, both drinking, picked up another drunken person named Jarvis, in Story's automobile. After taking a few drinks all three got out of the car, and Jarvis walked on down a narrow lane. Story permitted O'Connor to drive the car, which they both got in, and they claimed Jarvis staggered around and finally got in front of the car and was run over and killed. The court's opinion resulted in the quotation found in the original opinion. Such

opinion also cites Ex parte Liotard, 47 Nev., 169, 30 A. L. R. 63, 217 Pac. 960: "One who is so careless of the rights of others as to use a dangerous instrumentality while incapacitated by *drink, or who permits others to do so,* as here shown, invites the consequences. He must pay the penalty."

We think that the testimony heard relative to the different episodes connected with the drinking, and the drinking of appellant and his companion throughout the afternoon of the fatal accident, was properly admitted. They surely went far to show the condition of both parties relative to drunkenness and threw some light upon appellant's knowledge of the condition of Spears, who was engaged in driving the automobile. We are impressed with the idea that it went far to show that appellant knew of Spears' drunken condition, not only from the fact of Spears drinking, but also from the exhibition of his driving.

It is again noticed that appellant complains because of the trial court's failure to charge on contributory negligence. It will be observed that such a doctrine does not operate in a criminal cause of this character, and is not a defense in such matters as here under consideration. See Anderson· v. State, 135 Texas Crim. Rep. 107. However we note that a paragraph of the court's charge embodied such a doctrine as applied to the negligence of the father of the dead child. We also note that the trial court charged on an unavoidable accident. We do not think appellant was entitled to either of such charges. At the time of the collision the driver of appellant's car was unquestionably intoxicated, as was shown by uncontradicted testimony, and such driver was acting in violation of the law, and we quote from Menefee v. State, 129 Texas Crim. Rep. 375 (377), 87 S. W. (2d) 478: "This unlawful act was the direct and proximate cause of the injury to the little girl which resulted in her death. Hence he was not entitled to a charge on unavoidable accident any more than he would have been entitled to a charge on contributory negligence."

See Vasquez v. State, 52 S. W. (2d) 1056; also for an interesting discussion thereof see Sheffield v. State, 72 S. W. (2d) 245.

We have again considered all assignments of error and they do not impress us with the showing of any error. We have also re-read the entire record, as well as the interesting brief of attorneys, but remain of the convictions expressed in our original opinion.

The motion is overruled.