18 So.2d 420

## COOPER v. STATE.

### 4 Div. 817.

Court of Appeals of Alabama.

Feb. 8, 1944.

Rehearing Denied April 4, 1944.

James M. Prestwood and E. O. Baldwin, both of Andalusia, for appellant.

Wm. N. McQueen, Acting Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The evidence in this case is in one accord as to one fact only, and that is with reference to the serious and dangerous knife wounds which were inflicted upon the alleged injured party by the defendant. The physician and surgeon who attended Richard Fromm, the designated injured party, described the wounds upon his body and testified that several of the wounds were really very dangerous; and it appears from the record there could be no doubt about the very dangerous character of the almost innumerable wounds upon Fromm's body. That he survived them borders upon the miraculous. The doctor stated it was necessary to take from six hundred to eight hundred stitches in sewing up the wounds and that the injured man was on the operating table four hours and fifty minutes. We refrain from quoting further the gruesome description of the fearful wounds, as testified to by the attending physician and surgeon.

As stated hereinabove, there is no dispute or conflict in the testimony as to the foregoing.

The indictment charged assault with intent to murder, and the verdict of the jury reads: "We, the jury, find the defendant, Grant Cooper, guilty of an assault with intent to murder as charged in the indictment." He was so adjudged by the court and was sentenced to imprisonment in the penitentiary for a period of eight years. The record proper is in all respects regular and free from error. From the judgment of conviction this appeal was taken.

The State's evidence tended to show that this appellant inflicted the above described wounds upon the injured party in a cafe in the city of Andalusia, without any semblance of provocation.

The defendant and his witnesses in effect denied all the evidence of the State as to the attending facts of the difficulty and insisted that the injured party was the aggressor and was at fault in provoking and bringing on the difficulty and that he acted in self defense.

From the direct conflict in the testimony, as has been so often stated, jury questions were presented. The credibility and weight of the evidence and the legitimate inferences it afforded were for the jury. In other words, the weight to be given the evidence, its sufficiency in general, its probative value, or force, and the credibility of the witnesses where, upon the whole testimony, an issue of fact arises, are for the exclusive consideration and determination of the jury. The jury determine the weight to be given the testimony of the witnesses by their demeanor or conduct on the stand, their interest in the case, the probability or improbability of their testimony, its corroboration, the

facts bearing on their credibility, their intelligence and knowledge, and not by the mere number of witnesses. Conflicting evidence should be reconciled by the jury, if possible, and if they can not reconcile it, they may base their verdict on that part of the testimony which they consider worthy of credit, and reject that which they deem to be unworthy of belief. Inconsistencies and contradictions in the testimony of a witness do not make it inherently improbable. The jury can not arbitrarily reject the evidence, but the testimony of a witness, which is wilfully and corruptly false, may be disregarded by the jury.

The extended discussion of the question involved is indulged for the reason, that in the brief and argument filed by able and earnest counsel in this case, we are impliedly urged to hold that the court erred in submitting this case to the jury as set forth in the first four grounds of defendant's motion for a new trial. Said insistences are as follows:

"1. The verdict of the jury was contrary to the evidence in the case.

"2. The verdict of the jury was contrary to the great weight of the evidence in the case.

"3. The verdict of the jury was contrary to the preponderance of the evidence in the case.

"4. The Court committed error in refusing, at the defendant's request and before the jury retired, the following charge, which was in writing: 'The Court charges the jury that if you believe the evidence in this case, beyond all reasonable doubt, you cannot convict the defendant of assault with intent to murder.'"

■ Pending the trial several exceptions were reserved to the rulings of the court on the admission and rejection of the testimony. These exceptions have had our consideration. In no instance in this connection does prejudicial error appear, hence there is no merit in any of the exceptions thus reserved; and as the propositions involved are simple and academic, specific discussion is unnecessary and will not be indulged.

■ The only special written charge refused to defendant was affirmative in its nature as to the felony charged. Under the evidence the defendant was not entitled to a directed verdict as to the offense of assault with intent to murder, and in so holding the court committed no error.

As we see it, the principal insistence of error to reverse is based upon the following incident, as stated by the trial judge:

"This is the kind of case where the jury was kept together. The jury didn't separate for lunch or supper. They didn't separate at all. They were instructed to be kept together and stay in charge of the sheriff, which they did. At the close of the case, that is, after the case was over and the jury was out deliberating, it came late in the afternoon and the sheriff has to have some information beforehand, if he can, whether or not to make arrangements to feed that jury, because this jury was kept together. * * * Late over in the afternoon I hadn't heard anything from the jury, and I wanted to get that information from the jury: Did they want supper? So I looked around in the court room and I saw Mr. Prestwood, one of the attorneys representing the defendant, and I called Mr. Prestwood and Mr. Simmons, the solicitor, and asked them to go to the jury room with me, because it has been the practice of this Court not to go into jury rooms while they are deliberating unless the defendant is present or represented by his attorney; therefore, I called Mr. Prestwood and Mr. Simmons and asked them to go to the jury room. * * * I asked them were they making any progress—the actual language: 'Are you making any progress toward a verdict?' And somebody said, I think Mr. Hudson said, 'give us some time, I believe he said about fifteen minutes and we will let you know.' And then he asked me what the penalty was in the case, and I stated * * * that as far as an assault with intent to murder, the Court fixes the punishment and the jury had nothing to do with it all. They couldn't consider that, but if they found him guilty of an assault and battery they should fix a fine against him of not more than $500.00. I had already stated that to the jury in my oral charge to the jury. So after that, why, Mr. Hudson said, I understand that, but what is the penalty for an assault with intent to murder? and I said, 'from two to twenty years,' and walked out.

"Now the thing I really want to clarify about this business is that the Court didn't appear before this jury outside the presence of the defendant or his attorney. It is the practice the Court follows. I don't make a practice of going into the jury room

without the defendant is represented and knowing what transpired at the time, and for that reason I called Mr. Prestwood and the State and they were both present there at the time this occurrence transpired."

The above statement was made, as stated by the trial judge, on the hearing of defendant's motion for a new trial.

After a careful consideration of the foregoing we are of the opinion that the substantial rights of defendant were in no manner injuriously affected or infringed. We cannot see how it might have influenced the jury in any manner. What was said was but a mere repetition of a correct proposition of law and in the presence of defendant's counsel who made no objection at the time whatever. And under the following authorities we are clear to the conclusion no prejudicial error was committed. Sup.Ct. Rule 45, Code 1940, Tit. 7, Appendix; Harwell v. State, 11 Ala.App. 188, 65 So. 702; Lee v. State, ante, p. 91, 13 So.2d 583; Gable et al. v. State, ante, p. 280, 15 So.2d 594, 598.

The defendant was accorded a fair and impartial trial and the term of imprisonment fixed by the trial court was, under the facts of this case, not only within the province of the court, but to our minds merciful in the extreme.

No reversible error appearing in any of the rulings of the court, and, as stated, the record proper being regular in all respects, it follows that the judgment of conviction from which this appeal was taken must stand affirmed. It is so ordered.

Affirmed.