56 So.2d 385

## CHANEY v. STATE.

### 6 Div. 253.

Court of Appeals of Alabama.

Jan. 15, 1952.

K. C. Edwards, Birmingham, for appellant.

Si. Garrett, Atty. Gen., and Thos. M. Galloway, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant was indicted for murder in the first degree. His jury trial resulted in a verdict of guilty of murder in the second degree. Judgment was entered accordingly.

Since we are clear to the conclusion that this cause must be reversed because of irregularities in the trial below, we will depict only so much of the voluminous evidence submitted as will afford a basis for discussion of some of the points argued.

The appellant and deceased lived as neighbors in Birmingham. The killing resulted from a row between the deceased and Bobby Chaney, a daughter of appellant.

The State's evidence in general was directed toward showing that the deceased and Bobby Chaney were quarrelling in the street near the houses of appellant and deceased. The appellant's wife came out, and seeing and hearing the difficulty called to appellant, her husband, to bring his gun. The deceased, by the time the appellant arrived, had walked up on his porch and was standing there when appellant shot him with a shotgun. After firing one time the appellant walked closer to deceased and shot him a second time, the deceased having been knocked down by the first blast.

The evidence presented by the defense was to the effect that appellant came to the scene in response to his wife's and his daughter's calls for help. According to appellant the deceased and his daughter were fighting as he approached "and he had her on the ground and my wife had them, trying to get them apart, and he was beating her with something. After I come out, she said, 'I am going to tell my daddy,'

and Sam got up. He was beyond Susie's house. That is where the fight was. He got up when he saw me and broke toward me and came practically by his house, and I backed up fifteen feet or more so he couldn't get close to me."

According to appellant, the deceased, with his hand in his pocket, continued to advance on him, and he continued to retreat, telling deceased not to come up on him. After retreating some fifteen feet the deceased "made a break" on him and appellant fired his shotgun.

It appears from the record that after the jury had been instructed and had retired to the jury room they requested additional instructions. The jury were returned to the courtroom and the court gave them some additional instructions. Counsel for appellant excepted to certain portions of these additional instructions. The court then stated that if he had left anything out he would be glad to have the jury come back, and told the bailiff to return the jury.

However the record shows that, instead of having the jury returned to the courtroom, the judge, court reporter, solicitor, and defendant's counsel went into the jury room where the court instructed the jury further.

The following excerpt from a scholarly opinion by Simpson, J., in Lee v. State, 31 Ala.App. 91, 13 So.2d 583, 586, certiorari denied 244 Ala. 401, 13 So.2d 590, will we think, illustrate the applicable doctrine which compels a reversal of this case because of the above mentioned irregularities in the trial below:

"Erudite discussion of the rule is found in the case of Noell v. Com. 135 Va. 600, 115 S.E. 679, 681, 30 A.L.R. 1345, 1349, 1350. We trust the importance of the question justifies further illustration and the following quotation therefrom, to-wit: 'That principle did not spring solely from a regard for the welfare of the accused. The public has an interest in every case involving the life or liberty of a citizen, and both in England and in this country it has long been recognized as a settled rule of the common law, based as well upon public

policy as upon the interest of the accused, that his continuous presence, from arraignment to sentence, is an essential part of the process of law provided for his trial and without which the courts have no jurisdiction to pronounce judgment upon him. Constitutional provisions and statutory enactments not in conflict with such provisions may modify or abrogate this general rule. But in the absence of constitutional or statutory change—and there is none as to felony cases in Virginia [nor in Alabama]—conformity to the rule is essential to jurisdiction, and the accused cannot waive it.'

"See also Hopt v. Utah, 110 U.S. 574, 578, 4 S.Ct. 202, 28 L.Ed. 262; Lewis v. United States, 146 U.S. 370, 371, 372, 13 S. Ct. 136, 36 L.Ed. 1011; State v. Reed, 65 Mont. 51, 210 P. 756."

This appellant was put to trial on a capital case. A capital offense is one which may be punished by a sentence of death. Whether death, or a lesser sentence is imposed is immaterial and in no way affects the doctrine set forth in the excerpt above quoted. Lee v. State, supra.

It also appears that the court sustained the State's objections to questions, propounded to one or more of defendant's witnesses, which questions sought testimony as to whether the deceased had been drinking the evening of the shooting, and just prior thereto. This was after evidence of self-defense had been offered by the defense.

The defense should have been allowed such questions, and the court's rulings in the premises were erroneous. It is competent to show all that transpired at the time of the killing, and which occurred prior thereto leading up to and explanatory of the homicide. Washington v. State, 23 Ala.App. 253, 123 So. 277; Way v. State, 155 Ala. 52, 46 So. 273.

Appellant's counsel argues numerous other points as constituting error. They are not likely to arise in another trial of this case. We therefore pretermit discussion of them.

Reversed and remanded.