229 So.2d 46

Owen **FREEMAN**

v.

**STATE.**

**6 Div. 43.**

Court of Criminal Appeals of Alabama.

Dec. 9, 1969.

---

Carlton Mayhall, Jr., Haleyville, for appellant.

MacDonald Gallion, Atty. Gen., and Jasper B. Roberts, Asst. Atty. Gen., for the State.

CATES, Judge.

Indictment: Count One, second degree burglary; Count Two, grand larceny of a television receiver; Count Three, grand larceny of a cooler with fan. Verdict: guilty of second degree burglary. Sentence: three years.

I

August 7, 1968, the Sheriff of Cullman County searched Freeman's home. The Sheriff testified that Freeman was there and consented to the search. The Sheriff there saw and sequestered a television set and a cooler.

On cross, it was brought out that: a) Freeman was arrested August 3, for a different charge; b) on August 7, while under arrest, he signed "a waiver" after having been told of his rights. Without detailing the recital, which at the trial came in question, we shall characterize it as complying with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974.

The waiver which Freeman signed apparently was to do away with the need for a warrant to search his house.

On August 8, Freeman acknowledged— under all the pre-*Miranda* predicates—that he had broken into one or two cabins in

Winston County, one of them near Houston; he was then drunk; it took him two "loads" to carry off the "stuff."

The Sheriff found a fishing license in a stolen tackle box and through the licensee was able to put the Sheriff of Winston County onto tracing the house breaking and entering of which is of instant concern.

Mr. Howard Denson identified the cooler as his and the TV receiver as the property of his mother-in-law. Both had been in her house before it was broken and entered in June or July, 1968. On cross, defense counsel elicited that the house in question was one mile west of Liberty Church, about five from Old Houston measured as the crow flies.

## II

After the State rested, defense counsel moved for a mistrial on the ground that the confession of the defendant related to "another place," hence, its reception was prejudicial. Whether "another place" was intended to refer to the discrepancy between Freeman's admission that one of the cabins was "around Houston" and the testimony that the television and cooler came from a cabin about ten miles by road from Houston, is on this record unclear.

■ In view of the tendencies of the State's proof that the property in question came from the house laid in the indictment, we consider that there was no error in the trial judge's denying the motion. Long v. City of Opelika, 37 Ala.App. 200, 66 So.2d 126. Moreover, a motion for mistrial, as distinguished from a motion to exclude the State's evidence, was in the state of proof not appropriate because there was still open the avenue of clarification of the exact locus in quo. A motion for mistrial basically is a claim of incurable error. See discussion in Thomas v. Ware, 44 Ala. App. 157, 204 So.2d 501.

■ The claim that there were contradictory implications in the testimony of some or one of the prosecution witnesses is not sufficiently cogent in the instant record. Cooper v. State, 31 Ala.App. 356, 18 So.2d 420; Miller v. City of Birmingham, 44 Ala.App. 628, 218 So.2d 281(3).

■ Basically, contradictions of the hypothetical magnitude to support a motion to exclude the prosecution's entire proof would have to be mutually exclusive, and so self-cancelling as to add up to no proof at all. Moreover, after the prosecution has made a prima facie case beyond the scintilla rule (Ex parte Grimmett, 228 Ala. 1, 152 So. 263), the allegation of inherent contradiction raises by its very pronouncement a doubt as to what further proof might have been brought out by additional cross-examination.

## III

Self-explanatorily, Pinto v. Pierce, 389 U. S. 31, 88 S.Ct. 192, 19 L.Ed.2d 31 says:

" * * * the trial court had heard in the presence of the jury testimony regarding the voluntariness of an incriminating statement sought to be introduced by the prosecution, * * *

" * * * This Court has never ruled that all voluntariness hearings must be held outside the presence of the jury, regardless of the circumstances. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L. Ed.2d 908, 1 A.L.R.3d 1205 (1964), held that a defendant's constitutional rights are violated when his challenged confession is introduced without a determination by the trial judge of its voluntariness after an adequate hearing. A confession by the defendant found to be involuntary by the trial judge is not to be heard by the jury which determines his guilt or innocence. Hence, because a disputed confession may be found involuntary and inadmissible by the judge, it would seem prudent to hold voluntariness hearings outside the presence of the jury. In this case, however, the confession was held voluntary and admitted as evidence suitable for consideration by the jury. In

addition, there is no claim that because the hearing was held in the presence of the jury it was inadequate or had any other unfair consequences for the respondent.

"Finally, it is clear that the respondent in this case did not object to having the voluntariness of his admission considered in the presence of the jury. At his trial the court asked defense counsel whether there was any objection to the testimony being taken in the presence of the jury. Defense counsel replied, 'None whatsoever.' * * *" (footnotes omitted)

IV

Counsel for Freeman argues that the prosecution failed to prove that the cooler and television identified by Sheriff Cobb, Exhibits "A" and "B" "were the same two which Mr. Denson identified as being in the Courtroom." Appellant's Reply Brief, 1.

In deference to the earnestness of this argument, we extract below from the testimony of the two sheriffs and Mr. Denson:

"Q  Now, I'll ask you to state whether or not you got permission from Mr. Freeman to search this house before you did search it?

"A  Yes, sir, we did.

"Q  Was Mr. Freeman present when you searched it?

"A  Yes, sir.

"Q  And who else was present when you searched it?

"A  Myself, Sgt. Handcock, Investigator Clarence Harris, Chief Deputy Anderson.

"Q  And Mr. Freeman?

"A  Mr. Freeman, and Sheriff Cobb, [we interpolate; the High Sheriff of Winston] and I believe, one of his deputies.

"Q  I will ask you if you have ever seen this cooler before (indicating)?

"A  Yes, sir.

"Q  Where did you see this, Sheriff?

"A  In Freeman's house.

"Q  MR. WEAVER: All right, we mark this cooler, this Chico Cooler as State's Exhibit '1' and mark it for identification. Now, did you see this television set over too?

"A  Yes, sir, I seen one like that, yes, sir.

"Q  Have you got a record of the set you found over there?

"A  No, I don't believe so. Sheriff Cobb identified this by his file, I think, Mr. Weaver.

"Q  All right, now, this was picked up over there, wasn't it?

"A  Yes, sir, by Sheriff Cobb.

"Q  I mean, you picked it up at Freeman's house, didn't you?

"A  Yes, sir, Sheriff Cobb was along.

"Q  Sheriff Cobb was with you and he picked that up?

"A  Yes, sir.

"Q  And he picked this cooler up?

"A  Yes, sir." (R. p. 15)

"Q  Did you pick up that property there at Mr. Freeman's house?

"A  I picked up a television and a water cooled fan.

"Q  Can you identify the cooler and the fan here?

"A  Yes, sir.

"Q  What did you do with them when you brought them here?

"A  Locked them up down here in Mr. Nichols' office.

"Q  Did you get them out yesterday morning at the beginning of this trial?

"A  I was around there with them when some of the deputies brought them up here.

"Q Can you identify this cooler as being the cooler you picked up over there and locked up in Mr. Nichols' office?

"A That is the same cooler.

"MR. WEAVER: We now offer this water cooler which has been marked as Exhibit 'A', and now we offer it as State's Exhibit 'A'.

"THE COURT: Any objections?

"MR. MAYHALL: I would like to ask him specifically about these two items?

"THE COURT: All right.

"MR. MAYHALL: You say this particular cooler and particular TV set is the very same items that were taken from over there?

"WITNESS: Yes, sir.

"MR. MAYHALL: Have these been in your possession and under your control ever since they were taken from your * * * from this house?

"WITNESS: They have been in Mr. Nichols' office.

"Q You haven't had them in your possession?

"WITNESS: No.

"MR. MAYHALL: You say they are the very same cooler and very same TV set just by looking at them?

"WITNESS: Yes, I went with them yesterday when they got them.

"MR. MAYHALL: Tell me how you can specifically identify them?

"WITNESS: Well, I carried them down and locked them up, and went back and got them. I didn't check the serial number on that. I don't have it. I believe Mr. Denson had the serial number when I looked at

down there and when I left it. You don't see a lot of coolers like that. I put them in there together and I went back and got them yesterday, and, in my opinion, they are the same.

"MR. MAYHALL: Is there any way that you can identify them specifically from other makes and models?

"WITNESS: No.

"MR. MAYHALL: I object to their introduction.

"THE COURT: Overruled. They are in evidence.

"MR. WEAVER: I don't believe I offered this, but we are now offering the television set as State's Exhibit 'B'.

"MR. MAYHALL: Same objection.

"THE COURT: Overruled.

"(Said items hereinabove referred to, one being a water-cooled air-conditioner and the other being a TV set were thereupon received in evidence as State's Exhibit 'A' and State's Exhibit 'B'.)" (R. pp. 37–38)

"Q While you are up I want you to examine this television set here. Do you know that television?

"A I would have to check the number on it to see.

"Q All right, sir.

"A (Checking serial number) It is.

"Q All right, sir, who does that television belong to?

"A Eunice Morton.

"Q You say Eunice Morton is your wife's mother?

"A Yes, sir.

"Q If you will, go have a seat, and tell the jury what this paper is that you referred to there in your hand?

"A  It is a bill of sale for the TV.

"Q  I will ask you whether or not there is a serial number on this television and also on that paper?

"A  Yes, sir.

"Q  Do they correspond?

"A  Yes, sir.

"Q  All right, sir, now I want to ask you where was this cooler and this television set located the last time you saw them before they were in the possession of the Sheriff?

"A  Where was they before I saw them in the possession of the Sheriff?

"Q  Yes, sir?

"A  At Eunice Morton's home.

"Q  Is that down in Winston County where you testified she owned the house?

"A  Yes, sir.

"Q  Were both of these appliances installed in the house?

"A  Yes, sir.

"Q  I want you to tell the jury what, if anything, you know about their disappearance from the house?

"A  I just know they disappeared.

"Q  Do you know about when it was?

"A  It was the last part of June or the first part of July.  I don't remember exactly.

"Q  Of what year?

"A  1968.

"Q  Was anybody living in that dwelling house at the time?

"A  No, sir.

"Q  What, if anything, caused you to go to see about the house?

"A  My wife's sister got a phone call that the back door was open and that she couldn't fasten it, so we went down to see about it and there was the TV gone. We went down and found the back door bursted out.  It was broken around the edge. And the cooler was also gone.

"Q  Say it was broken out?

"A  Yes, sir.

"Q  You say the TV was gone and the cooler was gone?

"A  Yes, sir.

"Q  When did you next see the cooler and the television?

"A  When Sheriff Cobb left word for me to come over and identify it approximately two weeks later.

"Q  Did you do that?

"A  I did.

"Q  Did you see these two appliances in the sheriff's possession?

"A  I did.

"Q  Were they the same two appliances we have here in court today?

"A  Yes, sir."  (R. pp. 33–34)

■ We consider that the foregoing testimony was enough to give the State the right to have the jury pass on the identity of these objects.[1]  Adams v. Queen Ins. Co., 264 Ala. 572, 88 So.2d 331(5) (6)—witness's judgment as to sameness of car shown to have been stolen beforehand.

In Mitchell v. State, 94 Ala. 68, p. 69, 10 So. 518, p. 519, the reporter stated:

"* * * S. Deming, a witness for the prosecution, who was the depot-agent at Evergreen, testified that there was a crow-bar at the depot which he had

---

[1]. Daw v. State, 42 Ala.App. 642, 176 So.2d 49(3) involved a problem of identification of fungibles, together with the loophole of other persons also raising the crop.

See also Dawson v. State, 43 Ala.App. 254, 188 So.2d 283 where shoes proffered by the Sheriff had been half-soled.

frequently seen and used, and that he had not seen it since the night on which the attempt to wreck the train was made; but, being asked to identify the broken crow-bar as the one he had seen and used, 'said he could not tell positively, and would not like to swear positively that it was the same.' The court then instructed the witness, 'that it was a question of identity, and that he could determine whether it was the same bar upon the same principle that he determined whether his hat or his knife was his own.' The witness then answered, 'I am satisfied that it is the same crow-bar we had at the depot.' The defendant objected and excepted to the instruction given by the court, and also to the admission of the witness' answer. * * *"

About this, the opinion said:

"* * * On the question of the identification of persons or things, a witness may be allowed to speak as to his opinion or belief. He may be certain and free from doubt, or he may not be fully assured of the correctness of his conclusions. He may state the result of his examination of the person or object sought to be identified, and it is proper for him so to express himself as to inform the jury whether his statement is made confidently or doubtingly. The testimony is not to be excluded because the witness does not speak with a positive assurance. Turner v. McFee, 61 Ala. 468; Walker v. State, 58 Ala. 393; 1 Greenl. on Ev., § 440; 1 Wharton on Ev., § 511. There was no error in the instruction to the witness Deming on the question as to the identity of the crow-bar, and the answer of the witness, after such instruction, was properly admitted."

We have considered each and every one of the rulings of the trial judge in this record as is required by Code 1940, T. 15, § 389 and conclude therefrom that the judgment below is due to be

Affirmed.