On March 9, 1979, fourteen year old Pamela Allegood was killed when the automobile in which she was riding was "rear-ended" by the automobile driven by the defendant. As a result, the defendant was indicted for first degree murder. A jury convicted her of murder in the second degree and fixed punishment at ten years' imprisonment.
 I
The defendant maintains in this Court, as she did at trial, that the evidence is insufficient to establish the offense of murder in the second degree, the crime of which she was convicted, or to establish the lesser included offenses of manslaughter in the first and second degrees.
We need not detail the individual testimony presented by each witness at trial. We have thoroughly studied the evidence and are of the opinion that the following summary is an entirely reasonable interpretation of the evidence.
The collision occurred in Huntsville, Alabama, at the intersection of Mastin Lake Road and Blue Spring Road, between 11:00 and 11:30 on the night of March 9, 1979. The weather was dry and clear. Traffic was very light at the time.
Mastin Lake Road is paved and consists of five lanes where it intersects Blue Spring Road, which is also paved but has only two lanes. At the intersection of the two roads, there are traffic lights. Mastin Lake Road is lit by overhanging street lamps.
Around 11:00 on the evening of the homicide, the defendant purchased two cans of mackerel, a box of aluminum foil and a loaf of bread at the Bargain Land Grocery, which is in the vicinity of Mastin Lake Road. The defendant was a regular customer at the store. The cashier, Marsha Mayes, smelled the odor of alcoholic beverages on the defendant's person. Ms. Mayes testified that the defendant was intoxicated. The weight of this witness's opinion that the defendant was drunk or intoxicated is discussed in Part III of this opinion.
Immediately prior to the collision, Mrs. June Childress heard a noise in her front yard located on Mastin Lake Road, about two blocks from Blue Spring Road. She went out on her porch and saw a Buick or Oldsmobile going up the hill toward Blue Spring Road. The car was traveling "real fast" or "pretty fast" and "fighting to keep in the road as it went over the hill." The car was "wobbling" and "trying to keep straight in the road." Mrs. Childress heard a "sort of a scrunch or sort of a thud" after the car went over the hill and "thought it might have hit something."
The evidence indicated that the defendant had driven off the road and traveled through the front of several yards on Mastin Lake Road immediately before the collision. A Huntsville police officer described the damage:
 "There were two or three front yards that had been torn up, where someone had run through them. There were trees down and there was a utility pole guy-wire that had been torn down. A concrete cover over a drainage (ditch) had been torn up, and there was debris from a car in the yard."
The identity of the Buick driven by the defendant as being the automobile which actually did the damage to these yards was established by debris from the Buick which was found in the damaged yards.
A Chevette, a very small Chevrolet automobile, was stopped on Mastin Lake Road for a red light where the road intersects Blue Spring Road. Among the four young women who occupied this car was Pamela Allegood, the deceased.
According to the surviving passengers of the Chevette, all of whom were severely injured in the collision, they were driving on Mastin Lake Road, taking Ms. Allegood home after having been shopping. The Chevette stopped at the intersection for a red traffic light. The young women were laughing and talking among themselves. They remembered nothing after that until after the collision. *Page 1138 
The initial impact of the large 1973 Buick driven by the defendant against the Chevette occurred while the Chevette was stopped on Mastin Lake Road. The Chevette was struck a blow from behind, on the right rear of the car, which sheared off the right side of the automobile. The Chevette was destroyed to such an extent that, in objecting to the admission of a photograph of the automobile, defense counsel cited as one of his grounds the fact that the photograph "tends to or could tend to influence the jury simply because of the extreme damage done to the car." The defendant was identified as being behind the wheel of the Buick immediately after it came to rest after the collision.
The defendant left the scene of the collision, leaving her automobile. By checking the license plate, the police discovered that the Buick was registered to the defendant's husband.
The defendant was arrested by the Huntsville Police at her home at 2401 Springfield Road, which is a short distance from the intersection where the collision occurred, at 12:30 A.M. on March 10, 1979 — approximately one hour after the incident.
After the defendant admitted having been involved in an accident, she was warned of her constitutional rights and placed under arrest. She was then taken to the emergency room of the Huntsville Hospital.
The defendant was not treated at the hospital and was taken to the Huntsville City Jail. After warning the defendant of her constitutional rights, Officer William Dobbs interrogated her. In a statement which we have determined to have been voluntarily and intelligently given (as did the trial judge), the defendant related to Officer Dobbs some of her actions on the afternoon of the collision.
She told him that she had gotten off work at the Elegant Steak Room at 5:00 P.M.; that she met a man whom she didn't know; that this man was from out of town; that she purchased some beer and that they had gone to the parking lot at the Loveman's Mall to drink it. The defendant told Officer Dobbs that she had drunk three beers at the mall. At this point in the conversation the defendant "stated that she did not want to talk to (Dobbs) about anything else. She did not want her husband to find out anything." The defendant was not questioned further. The defendant did not tell Officer Dobbs what time she drank the beer or what time she left the mall.
The defense presented a different version of the accident. James Hollingsworth, the only defense witness, testified that he was driving his automobile on Blue Spring Road. As he approached the intersection of this road with Mastin Lake Road, the traffic light changed from green to yellow and he slowed to stop at the light. At that time, he noticed a Chevette traveling toward him on Blue Spring Road on the other side of the traffic light. When he was about 125 feet from the intersection, he noticed another automobile, which he saw "only a split second" before it collided with the Chevette, traveling on Mastin Lake Road. Ms. Hollingsworth testified that "as the small car came almost directly up under the light, the other car hit it." According to this witness, the Chevette entered the intersection against a red traffic light, which would have given the "other car" the green light.
In reviewing the sufficiency of circumstantial evidence the test to be applied is "`whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. (citations omitted).'" Dolvin v. State,391 So.2d 133, 137 (Ala. 1980); Cumbo v. State, 368 So.2d 871,874 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979). On review, this Court is required to consider the evidence in the light most favorable for the prosecution.McCord v. State, 373 So.2d 1242 (Ala.Cr.App. 1979); Coleman v.State, 37 Ala. App. 406, 69 So.2d 481 (1954). This Court must take the evidence favorable to the prosecution as true, and accord to the State all legitimate inferences therefrom.Johnson *Page 1139 v. State, 378 So.2d 1164 (Ala.Cr.App.), cert. quashed, Ex parteJohnson, 378 So.2d 1173 (Ala. 1979).
In Commander v. State, 374 So.2d 910 (Ala.Cr.App.), cert. quashed, 374 So.2d 921 (Ala. 1978), this Court reviewed the principles involved in a conviction of second degree murder arising out of an automobile accident.
 "It is settled that, in appropriate circumstances, a homicide committed by an intoxicated driver of an automobile may constitute murder in the second degree. Hyde v. State, 230 Ala. 243, 160 So. 237
(1935); Langford v. State, 354 So.2d 297
(Ala.Cr.App.), reversed, 354 So.2d 313 (Ala. 1977); McGhee v. State, 333 So.2d 865 (Ala.Cr.App. 1976); Wright v. State, 41 Ala. App. 684, 49 So.2d 835
(1963); Berness v. State, 38 Ala. App. 1, 83 So.2d 607, affirmed, 263 Ala. 641, 83 So.2d 613 (1953); Williams v. State, 30 Ala. App. 437, 7 So.2d 511
(1942); Reed v. State, 25 Ala. App. 18, 142 So. 441, cert. denied, 225 Ala. 219, 142 So. 442 (1932).
 "The argument that the gross negligence or wanton misconduct of the driver of an automobile causing the death of another constitutes either murder in the first degree or manslaughter but not second degree murder was rejected by the Alabama Supreme Court in Reed v. State, 225 Ala. 219, 142 So. 441 (1932) (see dissent of Anderson, C.J.).
 "Second degree murder is defined as the unlawful killing of a human being with malice, but without deliberation or premeditation. Miller v. State, 145 Ala. 677, 48 So. 47 (1906). In order to authorize a conviction for murder in the second degree for a homicide caused by the driving of an automobile, the evidence must be sufficient to warrant a finding by the jury that the accused either intentionally caused the collision or that he
 `was conscious of his acts, conscious of the impending danger surrounding him, and of the probable results of his acts, and then with a reckless indifference to the probable consequences of his acts, brought about the collision and death of the deceased.' Hyde, 230 Ala. at 244, 160 So. at 238.
See also Williams, 30 Ala. App. at 439, 7 So.2d 511.
 "A specific intent to kill is not essential to second degree murder. Fowler v. State, 155 Ala. 21, 45 So. 913 (1908); Bailey v. State, 133 Ala. 155, 32 So. 57
(1902); Titus v. State, 117 Ala. 16, 23 So. 77
(1898).
 `It is not necessary that there was an intent to kill to constitute murder in the second degree. It is sufficient if the defendant voluntarily set in motion or applied an unlawful force from which death ensued, however free the action may be from actual purpose to kill.' Smith v. State, 154 Ala. 31
at 34, 45 So. 626 at 627 (1908).
 Nor is it necessary that the defendant should have entertained the intent to do an unlawful act or that he should have his mind fixed upon the unlawful quality of the act he intended to do. `It was enough that he intended to do what he did, if that was unlawful.' Tucker v. State, 202 Ala. 5 at 6, 79 So. 303 at 304 (1918).
 "Murder in the second degree includes those cases which are not accompanied with the intent to take life but are committed by gross carelessness.
 `A killing may also be reckless, without evincing a purpose to take the life of any particular human being, and without evincing the degree of depravity shown in the illustrations we have mentioned. There may be no purpose to do mischief, as if one from a house-top recklessly throws down a billet of wood upon the sidewalk, where persons are constantly passing, and it fall upon a person passing by and kill him. Moore v. State, 18 Ala. 532.' Fields v. State, 52 Ala. 348 at 354 (1975).
 "Malice is a necessary element of murder in the second degree and is the factor which distinguishes second degree murder from first degree manslaughter. Roberson v. State, 183 Ala. 43, 62 So. 837 (1913); Smith v. State, 31 Ala. App. 12, *Page 1140 11 So.2d 466, cert. denied, 243 Ala. 627, 11 So.2d 473
(1943). It was a settled principle of common law that where death ensues from an act done without lawful purpose, dangerous to life, malice is implied. Clarke v. State, 117 Ala. 1, 8, 23 So. 671 (1898).
 "A second degree murder conviction has been sustained where the evidence indicated that the driver of the automobile was intoxicated or under the influence of whiskey, while traveling at a speed of forty to sixty-five miles per hour on the streets of Birmingham, turned a corner and the car struck and killed the deceased who was walking on the sidewalk, the car having climbed the embankment of the sidewalk which was several feet higher than the street and dragged the decease some sixty to sixty-five feet. Reed, supra. The evidence was also sufficient to support a conviction for second degree murder where the intoxicated driver of an automobile traveling at a speed of fifty miles per hour ran his car into the rear of two cars traveling in front of him and then pulled or swerved his car across the highway and ran into the automobile driven by the deceased. Williams, supra. In Hyde, supra, the conviction was sustained where the accused, under the influence of whiskey, overtook and passed the car driven by the deceased and `without reason or excuse' whipped his car across and immediately in front of the deceased, zig-zagging his car from one side of the road to the other until he hit the deceased's car in the rear. In Berness, supra, the accused was convicted of second degree murder where the evidence disclosed that he and the driver of the accused's automobile were both intoxicated and their car struck and killed a young woman who was walking about four feet off the paved portion of the highway, in the same direction as the accused's automobile was moving, but on the opposite side of the highway so that it was necessary for the automobile to cross the entire highway and go onto the shoulder of the road in order to strike the girl. Second degree murder convictions have also been sustained where the accused and another were racing each other when the deceased was killed, Wright, supra, and where the accused intentionally ran over the deceased. Blackwell v. State, 264 Ala. 553, 88 So.2d 347 (1956)."
Commander, 374 So.2d at 913-915.
The facts in Commander are that the defendant, while legally intoxicated and traveling at a substantial but undetermined rate of speed, plowed into the rear end of a vehicle parked completely off the paved portion of a straight but unmarked county road. The collision occurred at night and the lights of the parked automobile were on. We held that this evidence was sufficient to support a conviction for murder in the second degree.
On principle and authority we feel quite certain in holding that the facts of this case are sufficient to support the jury's verdict of second degree murder. In order to sustain such a conviction, the accused need not have been highly intoxicated or "blind drunk." In Wright v. State, 41 Ala. App. 684, 149 So.2d 835 (1963), the defendant drank two cans of beer, which were his third and fourth for the day, shortly before the fatality. There was no evidence that he was legally intoxicated.
In Berness v. State, 38 Ala. App. 1, 83 So.2d 607, affirmed,263 Ala. 641, 83 So.2d 613 (1953), it was noted:
 "`It is well settled under our decisions that where the accused is himself the driver of an automobile and drives it in a manner greatly dangerous to the lives of others so as to evidence a depraved mind regardless of human life, he may be guilty of murder in the second degree if his anti-social acts result in death of another, and this though he had no preconceived purpose to deprive any particular human being of life. Under such circumstances his acts are unlawful and without legal excuse, and malice may be inferred therefrom. Reed v. State, 25 Ala. App. 18, 142 So. 441; Wiliams v. State, 30 Ala. App. 437, 7 So.2d 511; Hyde v. State, 230 Ala. 243, 160 So. 237.'" *Page 1141 
In arguing against the defendant's motion to exclude the State's evidence, the District Attorney presented the following argument to the trial court. From the evidence we think that the jury might reasonably have reached the same conclusions.
 "Your Honor, here the evidence that has been presented in Court shows without contradiction that this woman had been drinking somewhere. For what period of time or how much we don't know. I believe the physical evidence and the circumstantial evidence surrounding the event that occurred on Mastin Lake show that she was in some type of mental state, caused by alcohol or the like, so that she ran off the road, busted a guy-wire and ran up through several people's yards, as has been the evidence, bounced back on the road, fighting for control, dragging limbs and a muffler underneath, topped a hill at a high rate of speed, went down the other side and hit the only car in sight. There were no other cars there. There were four other lanes that this defendant could have used in order to go through the intersection to go around that one car parked there. She would have to aim at the car in order to hit it. She had four other lanes that she could have gone through. It is the State's contention that she determined at that time and place to hit that car because there was plenty of room elsewhere and could lead a reasonable person to believe only that with the wide open spaces there and four other big lanes of traffic and two turn lanes to turn to another street, she topped that hill and determined to hit that car because she would have had to aim at it to hit it, and there was plenty of space elsewhere to go around it or to miss it. So in this case I say that it is outside the Langford decision and that this woman when she topped the hill, for whatever reason she has or for whatever reason she had at that time, that she determined to hit that car, which was the only car in five lanes of traffic, and she did hit the car and she determined to do so. The jury can draw that inference from the evidence, and that this case is outside the Langford decision."
The contention that one must be intoxicated before a second degree murder conviction resulting from an automobile accident will be sustained is simply without judicial or reasonable support. Unquestionably "(t)he taking of one or more drinks of intoxicating liquor would not of itself be sufficient to establish the fact of intoxication." Broxton v. State,27 Ala. App. 298, 300, 171 So. 390 (1936). However, the fact that the accused had been drinking is just one circumstance to evidence a "depraved mind regardless of human life." Berness.
As the facts of each particular case must determine the sufficiency of the evidence, we will allow the facts and circumstances of this case before us to speak for themselves. The evidence is sufficient to support the jury's finding and verdict of murder in the second degree.
 II
The defendant alleges that the trial court erred in admitting into evidence, over his timely objection, a color photograph of the deceased. In brief, the defendant describes this picture as "a large posed photograph of decedent, in color, and mounted on a large sheet of white cardboard for display purposes." The photograph "portrayed her as a pretty and wholesome appearing child." The defendant contends that this photograph could only inflame the jury and excite revenge. The defendant argues:
 "The photograph did not even purport to portray decedent as she appeared on the day she was killed, because the time the picture was taken was not identified.
 "The photograph had absolutely no probative value to any issue, and the only useful purpose it could have, from the prosecution's standpoint, was to excite the Jury's sympathy for the decedent, her family, and her friends, and thereby to so inflame the Jury's emotions, and to so bias and prejudice the Jury against the Defendant, that the Jury would seek, not Justice based on the evidence and the law, but revenge." *Page 1142 
The subject of the admissibility of photographs of the victim of a homicide is treated in C. Gamble, McElroy's AlabamaEvidence, Section 207.01 (2) (3rd ed. 1977).
 "The basic question to be asked in deciding the admissibility of a photograph of a victim, just as with any other demonstrative evidence is whether it has a reasonable tendency to prove or disprove some material fact in issue. This decision is left largely to the sound discretion of the trial judge. Of course, the decision of the trial judge is not necessarily final since his decision is reviewable to determine if there has been an abuse of discretion.
 "It generally is agreed that the photograph of the victim of the homicide, taken before the alleged murder, is admissible for the purpose of identification. This is usually admitted in connection with the testimony of a witness who saw the alleged deceased at the time of the killing and who is called upon to identify the deceased as the person in the photograph. The foregoing decisions which admit the victim's photograph into evidence for the purpose of identification are applicable even though there exists no dispute over the identity of the deceased. (citing Luschen v. State, 51 Ala. App. 255, 284 So.2d 282 (1973) (not error to introduce `angelic' looking picture of deceased); Boyd v. State, 50 Ala. App. 394, 279 So.2d 565 (1973); Sanders v. State, 202 [Ala. App.] 37, 79 So. 375 (1918))."
Upon these authorities we find no abuse by the trial judge of his discretion.
 III
The defendant also alleges that the trial court erred in refusing to grant his motion to exclude the opinion testimony of State's witness Marsha Mayes that the defendant was intoxicated when she was in Bargain Land Grocery shortly before 11:00 on the night of the homicide. Without any citation of authority, defense counsel's objection is predicated on the contention that Ms. Mayes did not testify to the "legal definition" of intoxication.
On direct examination, Ms. Mayes testified that she smelled alcohol on the defendant's person and that "from seeing people throughout (her) lifetime drinking alcohol or being around people with alcohol" in her opinion the defendant was "intoxicated". She also testified that the defendant was a "regular customer" in her store.
On cross examination Ms. Mayes testified that she believed the defendant was intoxicated because:
 "I have seen her in the store several times and this time she wasn't acting herself. It was different."
* * * * * *
 "Well, she couldn't find her money and she was kind of, you know, mumbling something. I couldn't figure out what she was trying to say."
When Ms. Mayes stated positively that she "knew" the defendant had been drinking, defense counsel attempted to discredit her testimony by showing that Ms. Mayes considered someone intoxicated if he had had anything at all to drink no matter how little. From the record of defense counsel's cross examination we find the following exchange:
 "Q. Are you saying that merely because you know someone has been drinking in the sense that you can
 smell alcohol on them then they are intoxicated, at least to some extent? Are you saying that?
"A. Yes, sir.
 "Q. So if I drank two cans of beer over the space of an hour in your opinion I would be intoxicated simply because I had drunk two cans of beer?"
* * * * * *
 (Objection of District Attorney and Court's ruling omitted)
"Q. Isn't that true? Isn't that what you are saying?
 "A. Well, you would have the leadway by having the two cans of beer, rather than if you hadn't drank anything at all. You would have a good start.
 "Q. All right. In your opinion, to some degree I would be intoxicated because I had gotten a start on getting drunk; is that right? *Page 1143 
"A. Yes.
 "Q. And if I had drunk one can of beer the same thing would be true, in your opinion?
"A. Yes, sir.
"Q. Or half a can?
"A. Yes, sir."
On redirect examination the District Attorney questioned Ms. Mayes:
 "Q. Ms. Mayes, I again ask you, at 29 years of age, you have been around people when they are sober and in your opinion you have been around the same people when they are intoxicated; is that right?
"A. Yes, sir.
 "Q. And, just as we all have, we have seen people sober and then see(n) them drunk?
"A. Yes.
 "Q. Tell the jury on that night at that time was this woman intoxicated or not? Was she drunk or sober?
"A. She was drunk."
On recross examination, defense counsel asked one question:
 "Q. Drunk in the same sense, Mrs. Mayes, that you are using the word `intoxicated' when you just testified to the jury?
"A. Yes, sir."
The trial judge's refusal to exclude the testimony of Ms. Mayes was without error.
Intoxication is a matter of common observation which requires no peculiar scientific knowledge. 31 Am.Jur.2d Expert and Opinion Evidence, Section 101 (1967). The general principles controlling opinion testimony on intoxication are stated in 23 C.J.S. Criminal Law § 866 (1961).
 "It has been broadly declared, or the principle has been broadly applied, that any witness may express his opinion as to intoxication, that opinion testimony as to intoxication is not limited to expert testimony, and may be given by law witnesses, and that intoxication or sobriety need not be proved by expert testimony, since it does not require any particular or special knowledge. The witness must have had a suitable opportunity, even though slight, for observation; the conditions under which the witness observed the person in question, and the opportunity to observe him, go to the weight, and not to the admissibility, of the testimony. It has been required that evidence be admitted showing that any witness who is asked to express an opinion as to accused's intoxication is properly qualified."
See also Gladden v. State, 36 Ala. App. 197, 54 So.2d 607, cert. denied, 256 Ala. 368, 54 So.2d 610 (1951).
Whether or not the qualification of a witness to state his opinion is sufficiently established is a matter resting largely in the trial court's discretion. Its ruling thereon ordinarily will not be disturbed on appeal unless there is a clear showing of abuse. Koziwski v. State, 248 Ala. 304, 27 So.2d 818 (1946). In determining competency, the trial judge is not bound by any hard and fast rule. Redwine v. State, 36 Ala. App. 560,61 So.2d 715, cert. denied, 258 Ala. 196, 61 So.2d 724 (1953).
Ms. Mayes was competent to testify that the defendant was intoxicated because (1) she had previously "been around" people who had been intoxicated and (2) had a suitable opportunity to observe the defendant. On cross examination, defense counsel revealed the basis of and for Ms. Mayes' opinion that the defendant was intoxicated. This is entirely different from showing that the witness did not have any reason or foundation upon which to state her opinion and conclusion. Since she was competent to state her opinion, the trial judge did not exclude her testimony and properly so. "`It matters not how slight the tendency of evidence may be towards establishing any material fact involved, the court cannot exclude it from the jury. Its weight is for their determination.' Morris v. State, Ala.Sup., 39 So. 608, 611." Williams v. State, 34 Ala. App. 253, 256,39 So.2d 29 (1948). It was the sole duty of the jury to evaluate the testimony of Ms. Mayes and to determine its probative force, weight and effect. *Page 1144 
 IV
The defendant maintains that the trial court erred in refusing to give defendant's written requested charges numbers 60 and 61.
 A
Charge No. 60:
 "The Court charges the jury that the jury cannot find the Defendant guilty of any crime included in the indictment, upon the theory that the deceased, Pamela Allegood, was killed as a proximate result of Defendant driving an automobile upon a public highway, while intoxicated."
As stated in Part III of this opinion, this was a matter of fact for the jury to determine. Consequently, charge No. 60 was properly refused.
 B
Charge No. 61:
 "The Court charges the jury that the mere fact, if it be a fact, that some time after 5:00 o'clock P.M., on March 9, 1979, and some time before the collision, the Defendant drank three beers, and, later, shortly before the collision, the witness, Marsha Mayes, smelled alcohol on Defendant's breath, is insufficient for the jury to find that, at the time of the collision resulting in Pamela Allegood's death, Defendant was intoxicated."
The trial judge did give defendant's written requested charge no. 35:
 "Evidence of the taking of one or more drinks of intoxicating liquor does not, of itself, establish the fact of intoxication. To establish intoxication, there must also be facts indicating a mental condition which is not normal, and which was produced or brought about by intoxicating liquor."
Requested charge no. 61 invades the province of the jury concerning a finding of fact and does not call for a consideration of all the evidence. It omits the facts that Ms. Mayes also testified that the defendant was "mumbling", couldn't find her money and "wasn't acting herself." The correct principle, which charge 61 did not state, is contained in charge 35 which was given by the trial judge.
We have carefully searched the record for error prejudicial to the substantial rights of the defendant and have found none. The judgment of the Circuit Court is affirmed.
AFFIRMED.
All Judges concur.
 *Page 1