BOWEN, Presiding Judge.
Fifteen-year-old Angela Vanzandt and Steven Shaffner were killed in a motor vehicle collision caused by Kim Ray Love, who had been drinking rum. Love was indicted for their murders. This appeal concerns his conviction for the murder of Miss Vanzandt and sentence to life imprisonment.
I
Love contends that the result of his blood alcohol analysis was inadmissible in evidence at trial because he was not under arrest at the time his blood was withdrawn. The question presented by this issue is whether evidence from a blood sample which was seized without consent, without a warrant, and without prior arrest should be suppressed.
On the night of October 5, 1984, Love, driving his pickup truck, crashed into a another pickup truck, two feet and ten inches across a double line and into the other truck’s lane of traffic. The collision killed Miss Vanzandt and Mr. Shaffner in the other truck.-
When Alabama State Trooper Gene Small arrived at the scene, emergency medical personnel were already attending the three occupants of the two wrecked trucks. Trooper Small first went to Love’s truck and observed Love: “He was screaming, hollering, loud, boisterous.... hollering don’t let me die; don’t let me die. * * [T]he words he was using appeared to be slurred.” Trooper Small smelled alcohol: “I kind of leaned over the emergency medical personnel, getting closer to him, and I could smell the odor of alcoholic beverages around him. I saw that he was awake and conscious.” Small testified that when he “first leaned into the truck [the smell of alcohol] appeared to be coming from the defendant.” Trooper Small then checked the occupants of the other truck.
Love was transported to Blount Memorial Hospital by the Blountsville Rescue Squad. Trooper Small returned to Love's truck and observed an unbroken one-fifth gallon bottle of Bacardi rum on the floorboard on the driver’s side. The top was off the bottle and some rum had spilled on the floorboard. The bottle “maybe had a half cup to a cup of liquid in it.”
Small radioed a request to the Birmingham State Trooper Office for a sample of Love’s blood. He testified, “At that time, I felt I had reasonable cause that a felony had been committed, and that I needed the evidence of that felony.” After a hearing on the motion to suppress, the trial judge found there was sufficient evidence of probable cause to order the blood test.
Blount County Sheriff J.C. Carr relayed Trooper Small’s request for a blood sample to the hospital. Medical laboratory technologist John Mahan told Love he “needed” to draw some blood and did so. There was no evidence that Love verbally consented to this procedure. Mahan gave the sample to Trooper Small, who delivered it to the Birmingham Division of the State Department of Forensic Sciences. Chemical analysis revealed a blood alcohol level of .30%— three times the statutory level of presumed intoxication. Alabama Code 1975, § 32-5A-Í94. Small informed the district attorney of these results. Love was arrested on October 19, 1984, fourteen days after the homicides.
At trial, the results of the blood alcohol analysis were not admitted under the implied consent law. See §§ 32-5-190 et seq. Compliance with the act is not the exclusive means for admitting evidence of blood alcohol test results. Aycock v. Martinez, 432 So.2d 1274, 1277 (Ala.1983); McGough v. Slaughter, 395 So.2d 972, 977 (Ala.1981); Whetstone v. State, 407 So.2d 854, 857 (Ala.Cr.App.1981).
Under our implied consent statute, a motorist need not have been arrested for driving under the influence of alcohol or drugs before a chemical test can be ordered. Consent is “implied” under the *21 statute if the motorist is “lawfully arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on the public highways of the state while under the influence of intoxicating liquor.” § 32-5-192(a) (emphasis added). The words “any offense” are broader than just the law against driving under the influence. Cf. People v. Sanchez, 173 Colo. 188, 476 P.2d 980, 982 (1970) (the Colorado implied consent law only applies to the misdemeanor offense of driving under the influence because of the particular qualifying language of the state statute). “An arrest for one of the enumerated offenses furnishes the implied consent under the statute.” Maffett v. Roberts, 388 So.2d 972, 977 (Ala.1980). Furthermore, even under the implied consent law, an arrest is not a condition precedent to the admissibility of test results, where the driver actually consents. Maffett, supra.
The purpose of the arrest requirement in the implied consent act is to meet the requirements of due process for the revocation of the driver’s license if the motorist refuses to submit to a chemical test. Schutt v. MacDuff, 205 Misc. 43, 127 N.Y.S.2d 116, 125-28 (1954). The arrest requirement does not create a new rule for the admissibility of evidence at trial:
“To require an arrest for the purpose of due process in order to revoke the driver’s license upon refusal of the chemical test is one thing. To make the arrest an absolute requirement for the admissibility of the chemical test evidence at the criminal trial is an entirely separate question.
“If a driver consents to take and does take the chemical test, he can avoid the license revocation under the implied consent law, but to then bar the results of the test from evidence solely because there had been no arrest is to defeat the purpose of the law.
“Of course the evidence must be legally seized because of the exclusionary rule laid down by the U.S. Supreme Court in Mapp v. Ohio. However, a legal seizure of evidence can also be made under a valid search warrant, or if the person waives his constitutional rights and freely and voluntarily consents to be searched. This is not to say that a seizure of blood for purposes of making a chemical test for intoxication cannot be done incident to a legal arrest. It can be. But to rule that only an arrest can meet the requirements of the exclusionary rule is to ignore a search warrant or consent as other valid methods of making a search and seizure of evidence.”
⅝ $ * sjc * $
“The courts have held that a valid arrest of the driver must precede the request for a chemical test to lay the basis for the revocation or suspension of the driver’s license should the person refuse to take the chemical test. This is an administrative or civil proceeding. However, it does not mean that the traditional rules of evidence at the criminal trial are changed. Certainly one method of making a legal seizure of evidence is incident to a lawful arrest — and this would be the situation in most instances of cases involving driving under the influence of intoxicating liquor. However, the valid seizure of evidence, to meet the requirements of the exclusionary rule, can also be made under a valid search warrant, or with the free voluntary consent of the person. Thus the requirements of an arrest for purposes of the implied consent revocation in an administrative or civil proceeding is one question and the admissibility of evidence at the criminal trial is another. They should not be confused.” Interpretation of Implied Consent Laws by the Courts at p. 25, Traffic Institute, Northwestern University (1972).
“The administration of a blood alcohol test is a seizure of the person, and a search of his body for evidence,” State v. Curtis, 106 Idaho 483, 680 P.2d 1383, 1388 (1984); i.e., it is subject to Fourth Amendment requirements. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), held that a police officer who had validly arrested a suspect need not obtain a search warrant before having medical per *22 sonnel withdraw a blood sample over the suspect’s objection. There, the seizure of the blood sample was incident to arrest. Since Schmerber, the courts have achieved inconsistent results regarding the arrest requirement. Comment, United States v. Harvey: Blood Alcohol Analysis and the Fourth Amendment, 1984 Detroit College of Law Review 1023, 1029 (1984) (hereinafter cited as “Comment”) (concluding that any decision extending Schmerber's arrest requirement “represents a trend toward the erosion of fourth amendment safeguards”).
Many courts, following a strict analysis of Schmerber, require an actual arrest before blood may be drawn from a suspect. See Holland v. Parker, 354 F.Supp. 196 (D.S.D.1973), and other cases cited at Comment, p. 1032, n. 78. Other courts have concluded that blood may be withdrawn from a suspect prior to his arrest where that arrest is “substantially contemporaneous” or “follows quickly on the heels” of the search. Comment, at 1031-32. Still, other courts have held that an arrest is required before taking a blood sample from a conscious defendant, but not required before the same test is administered to someone who is unconscious or otherwise incapable of consenting. United States v. Harvey, 701 F.2d 800, rehearing denied, 711 F.2d 144 (9th Cir.1983); State v. Campbell, 189 Mont. 107, 615 P.2d 190 (1980); Annot., 72 A.L.R.3d 325 (1976); Annot., 66 A.L.R.Fed 119 (1984).
Despite the arguments to the contrary, we find the requirement that an actual arrest must precede the seizure of blood from an injured motorist before blood is withdrawn is unreasonable where there is probable cause to believe the motorist was driving while intoxicated and exigent circumstances are present. To suppress the results of the blood alcohol analysis because Love had not been arrested before the blood was drawn renders the exclusionary rule “an end in itself” and invests it with “such independent force that it operates without reference to any improper conduct by the police.” Harvey, 711 F.2d at 144 (Kennedy, J., dissenting).
Even the contrary holding of Harvey notes that “Professor LaFave makes a strong argument that the key element is probable cause to arrest, whether or not the intent to arrest is formally announced.” Harvey, 701 F.2d at 804 (emphasis in original). LaFave argues:
“Although this same result [a blood sample can be taken only after a lawful arrest] has been reached by other courts, the better view is to the contrary, namely, that a ‘warrantless search is proper if the officer had probable cause to believe that a crime had been committed and probable cause to believe that evidence of the crime in question will be found’ and that ‘an immediate, warrantless search is necessary in order to * * * prevent the destruction or loss of evidence.’ Indeed, the case for permitting a taking of the blood sample upon probable cause that the defendant is intoxicated without first arresting him is, if anything, stronger than the case for the searches conducted in Cupp and Franklin. In the blood sample case, as opposed to those cases, there is no room whatsoever for the argument that the lack of a formal arrest may decrease somewhat the chances that the evidence will be destroyed, for the ‘evanescent’ character of the evidence is inherent in its nature and does not depend upon any motive of the defendant to destroy it. That is, the need for the blood sample arises out of the fact, as stated in Schmerber v. California, ‘that the percentage of alcohol in the blood begins to diminish shortly after drinking stops,’ an emergency which is in no way affected by whether or not the defendant has been formally arrested. It is the height of formalism, to say the least, to suggest that a warrantless search on probable cause in order to meet this emergency is reasonable only if the police first declare the hospitalized defendant under arrest. In particular, it ‘would be ridiculous to require a police officer to perform some formal ritual of arrest over the unconscious body of a critically injured person who was a party to a fatal automobile accident.’ The claim that the contrary *23 position ‘provides some measure of assurance that probable cause is based upon considerations independent of the blood-alcohol test results’ is untenable, as the need for a court to determine that probable cause existed prior to the test is present under either rule.” W. LaFave, 2 Search and Seizure § 5.4 at pp. 343-44 (1978).
State cases supporting this argument are found at Harvey, 701 F.2d at 804; 2 W. LaFave, Search and Seizure at 343, n. 19; Comment, at 1029, n. 52. “The fact that an arrest was not made before the test does not detract from the existence of probable cause. It is the existence of probable cause for the search, not the fact of arrest which is constitutionally significant.” Curtis, 106 Idaho at 489, 680 P.2d at 1389. See also State v. Heintz, 286 Or. 239, 594 P.2d 385 (1979) (recognizing but not deciding that “[S]ince the decision ... in Cupp v. Murphy, [412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900], it has been held ... that the taking of a blood sample is proper under the rationale of that case without either express consent or an arrest, at least when the defendant is in a ‘medical environment’ in a hospital and in a serious physical condition”); State v. Oevering, 268 N.W.2d 68, 73 (Minn.1978) (“a warrantless body search may be conducted in spite of the fact that the person searched is not formally under arrest when (1) the character of the search is highly unintrusive, (2) the evidence sought will be forever lost absent the search, and (3) sufficient probable cause exists to support a formal arrest”); to the same effect, see also Commonwealth v. Funk, 254 Pa.Super. 233, 385 A.2d 995, 999 (1978).
“It has been held that the taking, prior to arrest, of a blood sample for a blood alcohol test does not constitute an unlawful search and seizure when cause to arrest the person from whom the blood sample is taken exists prior to the taking thereof and there is no contention that arrest was not made within a reasonable time, or that it was not made on the basis of facts known to the officer who investigated the accident out of which the prosecution arose.” An-not., 89 A.L.R.2d 715, § 8 (1963).
Here, Trooper Small had probable cause to arrest Love. He had probable cause to believe that Love had been driving while intoxicated and that alcohol would be found in Love’s blood. See Curtis, 106 Idaho at 489, 680 P.2d at 1389 (“When the police arrived at the scene of the fatal collision, an officer noted both full and empty beer cans in Curtis’ car. When the officer talked to Curtis in an ambulance, he smelled a strong alcoholic odor on Curtis’ breath. Such facts would suffice to establish reasonable cause to arrest for driving while intoxicated, and they furnish probable cause to conduct a blood test.”).
Exigent circumstances were provided by the very character of alcohol. Alcohol in one’s blood after he has been drinking is “highly evanescent evidence,” Cupp v. Murphy, 412 U.S. 291, 296, 93 S.Ct. 2000, 2004, 36 L.Ed.2d 900 (1973), in that “the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system.” Schmerber v. California, 384 U.S. 757, 770, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908 (1966). For these reasons, we find that the results of the blood alcohol analysis were properly admitted into evidence.
II
Love contends that the trial court erred in failing to grant his motion for a judgment of acquittal, arguing that his conduct must be viewed “in the absence of intoxication,” and that he was convicted merely “because he drank alcoholic beverages.” Appellant’s brief, p. 26. This argument is without merit.
In brief, the appellant recognizes that the State’s evidence shows that Love “was so drunk that he should be comatose and that he could not think well.” However, Love took the stand in his own defense and admitted drinking some time prior to the collision but denied being intoxicated.
“Conflicting evidence always presents a jury question unless the evidence palpably fails to establish a prima facie case.” Waddle v. State, 473 So.2d 580, 582 (Ala. *24 Cr.App.1985). “[W]hen it is shown that the driver of an automobile has been drinking it becomes a question for the jury to say, from all the facts and circumstances, whether or not the driver was under the influence of liquor.” Evans v. State, 36 Ala.App. 145, 146, 53 So.2d 764 (1951). See also Boyd v. City of Montgomery, 472 So.2d 694, 696-97 (Ala.Cr.App.1985).
“A conviction for murder resulting from a homicide caused by the driving of an automobile is authorized where there is sufficient evidence to warrant a finding by the jury ... that the accused ... was conscious of his acts, conscious of the probable results of his acts, and then, with reckless indifference to the probable consequences of his acts, brought about the collison and death of the deceased.” Smith v. State, 460 So.2d 343, 346 (Ala.Cr.App.1984). See also Jolly v. State, 395 So.2d 1135, 1139-40 (Ala.Cr.App.1981); Commander v. State, 374 So.2d 910, 913-15 (Ala.Cr.App.), cert. quashed, 374 So.2d 921 (Ala.1978).
The judgment of the circuit court is affirmed.
AFFIRMED.
TAYLOR, PATTERSON and McMILLAN, JJ., concur.
TYSON, J., concurs with opinion.