Appellant, Christopher Doyle King, was indicted by a two-count indictment for murder in violation of § 13A-6-2, Code of Alabama 1975. Count one charged that appellant
 ". . . did recklessly engage in conduct which manifested extreme indifference to human life and created a grave risk of death to a persn other than the said Christopher Doyle King, and did thereby cause the death of Dwight Lee Reeves by shooting into an automobile in which the said Dwight Lee Reeves was a passenger and shooting the said Dwight Lee Reeves with a pistol, in violation of Section *Page 404 13A-6-2[(a)(2)] of the Alabama Criminal Code. . . ."
Count two charged that appellant
 ". . . did intentionally cause the death of another person, Dwight Lee Reeves, by shooting him with a pistol, in violation of Section 13A-6-2[(a)(1)] of the Alabama Criminal Code. . . ."
The case was tried to a jury, and on October 3, 1985, the jury returned a verdict of guilty of murder, as charged in count one. The trial court sentenced appellant to twenty years in the penitentiary and fined him $1,000, payable to the Alabama Crime Victims Compensation Fund.
King appeals, raising one issue: "Whether or not the State of Alabama failed to prove that the appellant manifested extreme indifference to human life in general as required by Section13A-6-2(a)(2) of the Alabama Code so as to support a conviction for reckless murder." This issue was properly preserved for our review by a motion for judgment of acquittal made at the conclusion of the State's case-in-chief and by motion for new trial, both of which were overruled.
The evidence presented by the State disclosed that on the evening of November 22, 1984, Dwight Lee Reeves and his cousin, Rodney Dunnaway, traveled from Fultondale to Birmingham to visit Trader Johns, a nightclub in east Birmingham. They traveled in Dunnaway's automobile. That same evening, appellant and a friend, Bobby Knight, visited the same club. They traveled in appellant's blue pickup truck. While at the club, appellant and Reeves apparently "bumped" into each other and exchanged words. Both were apparently upset by the encounter. Dunnaway and Reeves left the club around 1:30 a.m. to go home. Appellant and Knight left shortly before Dunnaway and Reeves. As Dunnaway and Reeves were pulling out of the parking lot of the club, a blue pickup truck pulled up closely behind Dunnaway's automobile and stopped for a short period. Dunnaway was driving, and Reeves was sitting on the passenger's side in the front seat of the automobile. Dunnaway drove away from the club, entered the interstate highway, and proceeded westward toward downtown Birmingham and Fultondale at a speed of approximately fifty-five miles per hour. Appellant and Knight left the parking lot of the club in the pickup truck, which appellant was driving, and after entering the interstate highway, proceeded westward in the same direction as Dunnaway was proceeding, and in the opposite direction from appellant's home. Appellant observed Dunnaway's automobile and recognized the passenger, Reeves, as the person with whom he had had the altercation at the club. Appellant drove his truck closely behind Dunnaway's automobile and, while blinking his truck's lights, "tailgated" it for several miles. Dunnaway reduced his speed several times to let the truck pass, but it continued closely behind him. As the vehicles approached the 31st Street exit, appellant pulled a .38-caliber pistol from under the seat of his truck, pulled up beside Dunnaway's automobile on the right side, fired two or three shots at the vehicle, and turned right on the off-ramp, leaving the interstate highway. Bullets struck the rear tires of Dunnaway's vehicle, causing them to immediately go flat, and the vehicle came to a halt some distance beyond the 31st Street exit. One bullet pierced the window on the passenger's side and struck Reeves in the head. He fell over into Dunnaway's lap. Reeves died from the head wound several hours later. Reeves and Dunnaway were unarmed and did nothing to provoke the shooting. Appellant went home immediately after the incident and did not report it. The police investigation ultimately led to his arrest some two months later. Appellant gave conflicting stories to several persons about the incident, and when arrested, falsely stated that he had no knowledge of the incident. He disposed of the pistol in a "dumpster," and it was never recovered. The State's case was primarily based upon the testimony of Dunnaway and Knight, and the testimony of each was essentially consistent with the other's.
Knight, testifying for the State, stated that, just before the incident, appellant stated that he was going to "mess with *Page 405 
them and shoot the tires out." He further testified that, just after the shooting, appellant stated that he "might have messed up or he shot the window out." In substance, Knight testified that there was no provocation or excuse for appellant's actions.
This court interpreted the meaning of reckless homicide proscribed by § 13A-6-2(a)(2), in Northington v. State,413 So.2d 1169 (Ala.Cr.App. 1981), cert. quashed, 413 So.2d 1172
(Ala. 1982). Therein, we stated the following:
 "Reckless homicide manifesting extreme indifference to human life (13A-6-2(a)(2)) must be distinguished from purposeful or knowing murder (13A-6-2(a)(1)). See American Law Institute, Model Penal Code and Commentaries, Part II, Section 210.2 (1980). Under whatever name, the doctrine of universal malice, depraved heart murder, or reckless homicide manifesting extreme indifference to human life is intended to embrace those cases where a person has no deliberate intent to kill or injure any particular individual. Napier v. State, 357 So.2d 1001, 1007 (Ala.Cr.App. 1977), reversed on other grounds, 357 So.2d 1011 (Ala. 1978). 'The element of "extreme indifference to human life," by definition, does not address itself to the life of the victim, but to human life generally.' People By And Through Russel v. District Court For Fourth Judicial District, 185 Colo. 78, 521 P.2d 1254, 1256 (1974)."
Id. at 1170-71. We also stated,
 "The function of this section is to embrace those homicides caused by such acts as driving an automobile in a grossly wanton manner, shooting a firearm into a crowd or moving train, and throwing a timber from a roof onto a crowded street. Napier, 357 So.2d at 1007."
Id. at 1172. The Supreme Court of Alabama subsequently adopted this interpretation. Ex parte Washington, 448 So.2d 404, 408
(Ala. 1984); Ex parte McCormack, 431 So.2d 1340 (Ala. 1983).
In Ex parte Weems, 463 So.2d 170, 172 (Ala. 1984), the Supreme Court, in an opinion by Justice Faulkner, stated the following:
 "Alabama's homicide statutes were derived from the Model Penal Code. In providing that homicide committed 'recklessly under circumstances manifesting extreme indifference to human life' constitutes murder, the drafters of the model code were attempting to define a degree of recklessness 'that cannot be fairly distinguished from homicides committed purposely or knowingly.' Model Penal Code and Commentaries, § 210.02, Comment, 4 (1980). That standard was designed to encompass the category of murder traditionally referred to as 'depraved heart' or 'universal malice' killings. Examples of such acts include shooting into an occupied house or into a moving automobile or piloting a speedboat through a group of swimmers. See LaFave Scott, Criminal Law, § 70 (1972)."
We find in a discussion of "depraved heart murder" in LaFave 
Scott, Criminal Law, § 70 (1972), the following:
 "For murder the degree of risk of death or serious bodily injury must be more than a mere unreasonable risk, more even than a high degree of risk. Perhaps the required danger may be designated a 'very high degree' of risk to distinguish it from those lesser degrees of risk which will suffice for other crimes. Such a designation of conduct at all events is more accurately descriptive than that flowery expression found in the old cases and occasionally incorporated into some modern statutes — i.e., conduct 'evincing a depraved heart, devoid of social duty, and fatally bent on mischief.' Although 'very high degree of risk' means something quite substantial, it is still something less than certainty or substantial certainty. The distinctions between an unreasonable risk and a high degree of risk and a very high degree of risk are, of course, matters of degree, and there is no exact boundary line between each category; they shade gradually like a spectrum from one group to another. *Page 406 
 "It should be noted, however, that for depraved-heart murder it is not a great amount of risk in the abstract which is decisive. The risk is exactly the same when one fires his rifle into a window of what appears to be an abandoned cabin in a deserted mining town as when one shoots the same bullet into the window of a well-kept city home, when in fact in each case one person occupies the room into which the shot is fired. In the deserted cabin situation it may not be, while in the occupied home situation it may be, murder when the occupant is killed. This illustrates that it is what the defendant should realize to be the degree of risk, in the light of the surrounding circumstances which he knows, which is important, rather than the amount of risk as an abstract proposition of the mathematics of chance.
 "Another matter to be noted is that the risk must not only be very high, as the defendant ought to realize in the light of what he knows, it must also under the circumstances be unjustifiable for him to take the risk. The motives for the defendant's risky conduct thus become relevant; or, to express the thought in another way, the social utility of his conduct is a factor to be considered. . . . Since the amount of risk which will do for depraved-heart murder varies with these two variable factors — the extent of the defendant's knowledge of the surrounding circumstances and the social utility of his conduct — the mathematical chances of producing death required for murder cannot be measured in terms of percentages.
 "The following types of conduct have been held, under the circumstances, to involve the very high degree of unjustifiable homicidal danger which will do for depraved-heart murder: firing a bullet into a room occupied, as the defendant knows, by several people; shooting into the caboose of a passing train or into a moving automobile, necessarily occupied by human beings; . . . driving a car at very high speeds along a main street. . . . Other sorts of extremely risky conduct may be imagined: throwing stones from the roof of a tall building onto the busy street below; piloting a speedboat through a group of swimmers; swooping an airplane as to risk the decapitation of the motorist. In any such case, if death actually results to an endangered person and occurs in a foreseeable way, the defendant's conduct makes him an eligible candidate for a murder conviction." (Footnotes omitted.)
In Hill v. Commonwealth, 239 Ky. 646, 40 S.W.2d 261 (1931), the court held that one who intentionally fires into an automobile which he knows is occupied and who kills someone therein is guilty of murder. Hill involved a traffic policeman firing at the tires of an occupied automobile without justification in an effort to stop it. The court stated the following:
 "The most that can be said is that he intentionally fired into the car knowing that it was occupied by human beings. It has long been the law that if one voluntarily and recklessly fires into a crowd and kills any person, he is guilty of murder though he had no intention to kill or injure any one. . . . The reason for the rule is that such conduct establishes 'general malignity and recklessness of the lives and personal safety of others, which proceed from a heart void of just sense or social duty, and fatally bent on mischief. And whenever the fatal act is committed deliberately or without adequate provocation,' the jury has a right to presume it was done with malice. The rule has been applied where one having reason to believe that it was occupied by persons intentionally discharged a firearm into a dwelling house and killed some one therein. Washington v. State, 60 Ala. 10, 31 Am.Rep. 28, 3 Am.Crim. Rep. 171; State v. Capps, 134 N.C. 622, 46 S.E. 730; Russell v. State, 38 Tex.Crim. R., 44 S.W. 159. It has also been held that one who deliberately shoots into a railroad train, occupied by passengers, cannot avoid liability for the resulting homicide by disclaiming malice, but is guilty of murder. Banks v. State, 85 Tex.Crim. R., 211 S.W. 217, 5 A.L.R. 600. As an automobile offers less protection *Page 407 
than a railroad coach, there is every reason why the same rule should apply where one intentionally fires into an automobile, which he knows to be occupied by human beings, and kills some one therein."
Id. at 649, 40 S.W.2d at 262.
In Washington v. State, 60 Ala. 10, 15, 31 Am.Rep. 28 (1877) (quoting Code of 1876, § 4295), in affirming a murder conviction where the defendant had fired a pistol into a room occupied by several people, the Alabama Supreme Court stated:
 "Every homicide . . . perpetrated by any act greatly dangerous to the lives of others, and evidencing a depraved mind regardless of human life, although without any perceived purpose to deprive any particular person of life, is murder in the first degree."
See also Gothard v. State, 452 So.2d 889 (Ala.Cr.App.), cert. stricken, 450 So.2d 479 (1984), and Smith v. State,460 So.2d 343 (Ala.Cr.App. 1984), for cases involving drunk driving situations where convictions were had under § 13A-6-2(a)(2).
In the instant case, appellant questions the sufficiency of the State's evidence that he manifested extreme indifference to human life in general, an element of the offense charged which must be found to exist in order to sustain a conviction for reckless murder under § 13A-6-2(a)(2).
In deciding whether or not there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, we must review the evidence in the light most favorable to the prosecution. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979); Bass v. State,55 Ala. App. 88, 313 So.2d 208 (1975). The action of the trial court in denying a motion for judgment of acquittal and in denying a motion for a new trial must be reviewed by determining whether or not there existed legal evidence before the jury, at the time the motions were made, from which the jury by fair inference could find the defendant guilty. Thomasv. State, 363 So.2d 1020 (Ala.Cr.App. 1978). In applying this standard, the appellate court will only determine if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State,447 So.2d 199 (Ala.Cr.App. 1983); Thomas v. State, supra.
Section 13A-6-2(a)(2) requires the prosecution to prove conduct which manifests an extreme indifference to human life, and not to a particular person only. Its gravamen is the act of reckless by engaging in conduct which creates a grave or very great risk of death under circumstances "manifesting extreme indifference to human life." What amounts to "extreme indifference" depends on the circumstances of each case, but some shocking, outrageous, or special heinousness must be shown. Commentary to § 13A-6-2(a)(2); Northington, supra. A person acts recklessly when he is aware of and consciously disregards a substantial and unjustifiable risk. § 13A-2-2(3). "The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." Id. To bring appellant's conduct within the murder statute, the State is required to establish that his act was imminently dangerous and presented a very high or grave risk of death to others and that it was committed under circumstances which evidenced or manifested extreme indifference to human life. The conduct must manifest extreme indifference to human life generally. Ex parte McCormack, supra; Northington, supra. The crime charged here differs from intentional murder in that it results not from a specific, conscious intent to cause the death of any particular person, but from an indifference to or disregard of the risks attending appellant's conduct.
The State's evidence of appellant's conduct in firing his pistol at the Dunnaway vehicle on the interstate highway without excuse or provocation, under the circumstances enumerated above, was sufficient for the jury to conclude that appellant was aware of a very great risk of death to others and consciously disregarded it. The evidence without question justifies a finding *Page 408 
that appellant's conduct was unjustifiable and, because of the very great risk involved, that his conduct constituted a gross deviation from the standard of conduct that a reasonable person would observe. There was sufficient evidence presented for the jury to conclude that appellant's conduct manifested an extreme indifference to human life generally. The firing at the vehicle under the circumstances created a very great risk of death to Dunnaway, the driver, as well as his passenger, Reeves, and to anyone else who might have been using that portion of the interstate highway on that occasion.
The evidence strongly supports the conclusion that appellant was bent on mischief and acted with a "don't give a damn attitude," in total disregard of the public safety. Napier v.State, 357 So.2d 1001 (Ala.Cr.App. 1977), rev'd on other grounds, 357 So.2d 1011 (Ala. 1978).
To summarize, the State presented sufficient evidence from which the jury could find that appellant recklessly and unjustifiably engaged in conduct which manifested extreme indifference to human life, created a grave or very high risk of death to others, and caused a death. After examining the evidence and applying the proper standards of review, we find that there was sufficient evidence presented by the State to submit the case to the jury and for the jury to conclude beyond a reasonable doubt that appellant's conduct was well within that defined and proscribed by § 13A-6-2(a)(2).
Accordingly, appellant's motions for judgment of acquittal and for a new trial based on the assertion of insufficient evidence were properly denied. The judgment in this case is due to be affirmed.
AFFIRMED.
All Judges concur. *Page 1030