The appellant, Carl McArthur Jordan, was charged in four separate indictments with several crimes committed on the same day. Count one of the first indictment charged him with theft of property in the first degree, in violation of § 13A-8-3, Code of Alabama 1975, and count two charged him with burglary in the third degree, in violation of § 13A-7-7, Code of Alabama 1975. Count one of the second indictment charged the appellant with theft of property in the first degree, in violation of §13A-8-3, Code of Alabama 1975 and count two charged him with burglary in the first degree, in violation of § 13A-7-5, Code of Alabama 1975. Count one of the third indictment, charged the appellant with intentional murder, and count two, charged him with reckless murder, each in violation of § 13A-6-2, Code of Alabama 1975. The fourth indictment charged the appellant with criminal mischief in the first degree, in violation of §13A-7-21, Code of Alabama 1975.
The jury found the appellant guilty of theft of property in the first degree on both counts, of burglary in the first degree, of burglary in the third degree, of reckless murder and of criminal mischief in the first degree. The appellant was sentenced to 5 years in the penitentiary for each conviction for theft of property. He was sentenced to 5 years in the penitentiary for his conviction for burglary in the third degree and to 10 years' imprisonment for his conviction for burglary in the first degree. He was sentenced to 10 years in the penitentiary for his conviction for criminal mischief. He was sentenced to life in prison for his conviction for reckless murder. The sentences, with the exception of the sentence of life in prison, were to be served concurrently. The other sentences were to be served consecutively with the sentence of life imprisonment; thus, the appellant's sentence is effectively life imprisonment plus 10 years.
The evidence presented during the trial tended to show the following. The appellant and his cousin, Michael Ray Jordan, a co-defendant, had broken into two houses in Montgomery, Alabama, on November 21, 1991. From one of the houses the appellant and Michael Jordan had taken an antique double barrel shotgun, along with numerous other items. A witness for the State identified the appellant and his cousin as individuals she had seen at the victim's house that day. *Page 740 
The evidence further tended to show that the appellant and Michael Jordan had broken into another house in the same area as the first and had taken a camcorder along with numerous other items. Some of the items stolen by the appellant and his cousin were recovered from other individuals who testified that the appellant and Michael Jordan had sold the items to them.
The State presented evidence that on or about the day the thefts of the two residences occurred, a cow was killed by a shot in the head with a shotgun. A witness testified that the appellant and Michael Jordan had recorded the dead cow on videotape with the stolen camcorder. Also, on November 21, 1991, Henry Murray was standing by his bedroom window when shot with a shotgun. Mr. Murray died as a result of internal bleeding caused by the gunshot wound. Mr. Murray's house is located approximately four miles from where the dead cow was found. The State's evidence tended to show that the pellets removed from the cow and the pellets removed from Mr. Murray's body were copperplated .00 buckshot pellets. The pellets taken from the cow and from the body of Mr. Murray were the same type of pellets found in the shells that were sold with the antique shotgun that was stolen by the appellant and Michael Jordan.
Another State's witness, a friend of the appellant and his cousin, testified that the appellant and his cousin had been trying to sell the camcorder and a videocassette recorder. This witness had purchased the stolen videocassette recorder. The witness testified that the appellant and his cousin had showed him a videotape of the dead cow. The witness further testified that the appellant and his cousin had told him that they shot the cow.
The State also presented evidence tending to show that the appellant, and possibly, Michael Jordan, were members of a gang. A friend of the appellant and of Michael Jordan, testified that when the crimes were committed, he was a member of a gang known as the Disciples. He further testified that the appellant was also a member of the gang and that Michael Jordan had claimed to be a gang member. Both the appellant and Michael Jordan wore clothing with gang colors. He stated that the appellant had dropped in rank in the gang and that the appellant told him approximately a week before the crimes that he wanted to move up in rank. Moreover, he testified that on November 21, 1991, the appellant had told him that he and Michael Jordan had shot a person and a cow with a gun that they had later sold. He testified that killing Murray, an elderly black man, could get the appellant in trouble rather than move him up in rank with the gang.
R.D. Bryan, an investigator with the Montgomery County Sheriff's Department, who took statements from Michael Jordan, testified that Michael first denied having any knowledge of the burglaries or the shootings. Michael then admitted being involved in two burglaries with the appellant. Bryan further testified that Michael Jordan stated that he and the appellant were riding in a vehicle and that they had the shotgun they had stolen pointed out of the window of the vehicle. Bryan stated that Michael had told him that the shotgun was cocked, but that the appellant, who was driving, did not know it was cocked. According to Bryan, Michael said that, as they approached Murray's house, the appellant said that a "nigger lady" lived there and placed his finger on the trigger. Bryan testified that in his statement Michael said that he tried to push the appellant's hand away from the gun and that the gun fired. Bryan said that Michael told him that a window in Murray's house shattered and that he told the appellant that they had just shot someone through the window.
John Shumway, a Montgomery police officer specializing in gangs, testified that the Montgomery Police Department uses certain criteria to determine whether an individual is a gang member. Officer Shumway identified the different gangs in the Montgomery area and testified to the structure of and the ranks within the gangs. Shumway testified that one way to move up in rank within a gang is by committing certain types of crimes. The more severe the crime, the more likely a member is to gain higher rank. Shumway testified that a killing by a gang member is usually committed during a drive-by *Page 741 
shooting. There is no rule as to whom the victim must be. The gang member is usually accompanied by another gang member to witness the shooting member.
Before trial, defense counsel filed a motion in limine, seeking to exclude testimony or evidence relating to the appellant's alleged gang affiliation. The trial court denied the motion. After the testimony regarding gangs was presented to the jury, defense counsel moved for a mistrial. The motion was denied and the case was submitted to the jury.
 I
The appellant first asserts that the trial court erred in allowing the State to present any evidence of the appellant's and Michael Jordan's alleged gang affiliation. We hold that the trial court did not err.
We are mindful that in Thomas v. State, 625 So.2d 1149
(Ala.Crim.App. 1992), this Court stated, "We equate the association of a defendant with a 'gang' as evidence of a collateral criminal act that is presumptively prejudicial and that is admissible only when probative and under certain limited exceptions." Under the exclusionary rule, evidence of collateral offenses or of the defendant's bad character is inadmissible to prove his guilt of the charged offense.Anonymous v. State, 507 So.2d 972, 973 (Ala. 1987). However, there are exceptions to that rule and other purposes for which such collateral criminal offense evidence may be admitted. Collateral offense evidence may be used to establish intent, motive, identity, or a common plan, scheme or design. Giddensv. State, 565 So.2d 1277 (Ala.Crim.App. 1990); See C. Gamble,McElroy's Alabama Evidence § 69.01 (4th ed. 1991) (citations omitted).
In Thomas, we ruled that evidence that the defendant was a member of a gang was inadmissible as proof of how the defendant learned to commit a drive-by shooting. In Thomas, the purported purpose of introducing the evidence did not tend to establish intent, motive, or identity, or come within any other proper exception to the general exclusionary rule. However, in this case, the evidence of the appellant's gang affiliation does tend to establish motive for the crimes. A friend of the appellant testified that a week prior to the crimes the appellant stated that he wanted to move up in rank with his gang and that he knew that committing crimes could earn him a higher rank. An expert on gangs testified that one way to move up in rank in a gang is to commit a crime. Furthermore, for a gang member, a killing is usually accomplished in a drive-by shooting, and it does not matter who the victim is. Usually another gang member is present to witness the killing. The evidence showed that the crimes with which the appellant was charged were all committed on the same day, for one common purpose, namely, to ascend in rank within a gang, and that the appellant's cousin was present as a participant and a witness.
The Alabama Supreme Court has held that evidence tending to establish motive is always admissible. Bowden v. State,538 So.2d 1226, 1235 (Ala. 1988) (citing McClendon v. State,243 Ala. 218, 8 So.2d 883 (1942); Donahoo v. State, 505 So.2d 1067
(Ala.Crim.App. 1986). The evidence sought to be excluded here was fits within the motive exception to the general exclusionary rule and thus was admissible.
The appellant argues further that the probative value of the evidence of gang affiliation was outweighed by its prejudicial effect. Clearly, the evidence was probative as to the appellant's motive to commit the crimes. In this case, the evidence was conflicting as to whether the shooting through Mr. Murray's window was accidental or intentional. The evidence that the appellant was involved in gang activities was probative as to the issue of whether the shooting was more than a mere accident and tends to explain the series of crimes that were committed on November 21, 1991.
The trial court did not allow the State's expert to testify that, in his opinion, the appellant was a member of a gang. The trial court refused to allow the State to introduce, through the testimony of the expert, a picture of the appellant dressed in colors associated with a gang. In fact, the trial court prevented all specific references by the *Page 742 
State's expert as to the appellant's affiliation with a gang. Both of the witnesses who testified about gang affiliation during the State's case-in-chief were thoroughly cross-examined by defense counsel. All of these factors lessened any prejudicial impact that the evidence about gangs may have had upon the jury. Certainly, the probative value that the evidence had in establishing motive for the crimes outweighed any prejudicial impact.
 II
The appellant further asserts that the State failed to establish a prima facie case of reckless murder pursuant to § 13A-6-2(a)(2), Code of Alabama 1975, and that, therefore, his conviction for that crime is due to be reversed. We disagree.
Pursuant to § 13A-6-2(a)(2), reckless murder is defined as follows:
"(a) A person commits the crime of murder if:
". . . .
 "(2) Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct or creates a grave risk of death to a person other than himself, and thereby causes the death of another person."
The appellant specifically asserts that the State failed to produce sufficient evidence establishing "circumstances manifesting extreme indifference to human life." This Court has stated that some "shocking, outrageous or special heinousness" must be shown to establish extreme indifference to human life.King v. State, 505 So.2d 403, 407 (Ala.Crim.App. 1987). In determining whether there was sufficient evidence to support the verdict of the jury, we must accept as true the evidence introduced by the State, draw all legitimate inferences from the evidence, and consider that evidence in the light most favorable to the State. Morgan v. State, 589 So.2d 1315, 1317
(Ala.Crim.App. 1991); Jackson v. State, 516 So.2d 726, 752
(Ala.Crim.App. 1985).
In this case, the State's evidence tended to establish that the appellant and his cousin committed a series of crimes on November 21, 1991, in order for the appellant to obtain a higher rank in the gang to which he belonged. The appellant and his cousin pointed a loaded shotgun out of a vehicle toward a residence while the victim was standing at the window. As the appellant approached the victim's residence, he said that a "nigger lady" lived there, and then he and his cousin pulled the trigger to the shotgun. We hold that sufficient evidence was presented from which the jury could infer that the appellant's actions manifested extreme indifference to human life.
 III
The appellant also argues that the trial court erred in denying his motion for a judgment of acquittal as to the charge of criminal mischief. We disagree.
The criminal mischief charge was based upon the appellant's killing the cow with the shotgun. According to § 13A-7-21, Code of Alabama 1975, criminal mischief in the first degree is defined as follows:
 "(a) A person commits the crime of criminal mischief in the first degree if, with the intent to damage property, and having no right to do so or any reasonable ground to believe that he has such a right, he inflicts damages to property:
"(1) In an amount exceeding $1,000.00; or
"(2) By means of an explosion."
In this case, the owner of the cow testified that the cow was worth more than $1,000. The appellant and his cousin admitted to a friend that they had shot the cow. In fact, either the appellant or Michael Jordan videotaped the dead cow. Reviewing this evidence in the light most favorable to the State, we hold that the trial court did not err in denying the appellant's motion for a judgment of acquittal.
 IV
The appellant next argues that the trial court erred in refusing to give his requested jury charge to the effect that burglary in the third degree is a lesser included offense of burglary in the first degree. The appellant specifically argues that he was entitled *Page 743 
to this jury instruction as to the burglary of the house from which the antique shotgun was stolen.
Section 13A-7-5, Code of Alabama 1975, defines burglary in the first degree as follows:
 "(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in the dwelling or in immediate flight therefrom, he or another participant in the crime:
 "(1) is armed with explosives or a deadly weapon."
In Pardue v. State, 571 So.2d 333, 334 (Ala. 1990), the Alabama Supreme Court held that "a person commits the crime of burglary in the first degree when, in the course of committing a burglary, the person is armed with a deadly weapon." For present purposes, the difference between first and third degree burglary is possession of a deadly weapon. In this case, the appellant and his cousin possessed the antique shotgun during the burglary. This evidence supports a charge of first degree burglary.
However, the appellant argues that because every element of third degree burglary with the exception of being armed with explosives or a deadly weapon is included in first degree burglary, he is entitled to a jury instruction on third degree burglary as a lesser included offense of first degree burglary. This argument is without merit. A charge on a lesser included offense is not proper unless there is a reasonable theory from the evidence to support the position. Clark v. State,451 So.2d 368 (Ala.Crim.App. 1984). The trial court may properly refuse to charge the jury on a lesser included offense when it is clear that no evidence brings the offense within the definition of the lesser offense, or when the requested charge would have a tendency to mislead or confuse the jury. Woods v. State,485 So.2d 1243 (Ala.Crim.App. 1986).
In this case, there was no dispute that the antique shotgun was stolen during the burglary as to which the appellant requested the instruction on third degree burglary. Since the shotgun was taken during the burglary, there is no evidence or reasonable theory that tends to bring the offense of third degree burglary within the lesser included offense of first degree burglary. Thus, we hold that the trial court did not err in refusing to instruct the jury that burglary in the third degree is a lesser included offense of burglary in the first degree.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
All the Judges concur.